**STATE of Iowa, Appellee,**

v.

**Mark Roberson BAKER, Appellant.**

**No. 02–0968.**

Supreme Court of Iowa.

April 7, 2004.

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, Stephen H. Holmes, County Attorney, and Mary Howell Sirna and Angelina Thomas, Assistant County Attorneys, for appellee.

LARSON, Justice.

Mark Roberson Baker was convicted of third-degree sexual abuse in violation of Iowa Code sections 709.1(3) and 709.4(2)(*b*) (2001) and four counts of providing alcohol to a person under legal age in violation of Iowa Code sections 123.47(1) and 123.47(4). He appealed all of his convictions, but his argument on appeal does not address the alcohol convictions. The court of appeals affirmed. On the sexual-abuse portion of his appeal, the defendant challenges (1) the district court's ruling denying his proffered evidence that the alleged victim, Julia, had earlier made a false claim of a sexual encounter with a neighbor, and (2) the defendant received ineffective assistance of counsel when his counsel failed to request a limiting instruction concerning the defendant's prior convictions.

We vacate the decision of the court of appeals, affirm the convictions of providing alcohol to underage drinkers, reverse the conviction of third-degree sexual abuse, and remand for a new trial on the sexual-abuse charge. Because the defendant is to be given a new trial on other grounds, we do not address his ineffective-assistance-of-counsel claim.

## I. *Facts and Prior Proceedings.*

Evidence was introduced at the trial from which the jury could have found the following facts. On June 7, 2001, Julia went with friends to a swimming pool in Ames. Julia, who was thirteen at the time, called the defendant, who was twenty-four, and arranged for him to come to the pool to get her. The defendant came to the pool, and his younger brother, Clinton, came in a separate car. Julia left the pool with the defendant, and Traci, one of Julia's friends, left with his brother.

The group had planned to drink at the home of a third girl, Tyanne. However, Tyanne's mother was home, and they decided to take their party to the country. They stopped at Char's, an Ames convenience store, where the defendant bought wine coolers and beer. The group drove about three miles into the country and parked. Julia finished a forty-ounce beer in about ten minutes, encouraged by the defendant and his brother to "chug" it. While getting a second beer for Julia, the defendant and Julia kissed. Although Julia felt intoxicated, she continued to drink, with the defendant and his brother helping her tilt the bottles to drink them faster. Soon the girls began to look for a restroom, and the group headed back to Char's, driving both cars. Julia again rode with the defendant. On the way to Char's, the defendant pulled over to the side of the road where, according to Julia, they had sexual intercourse. Julia immediately told her friends, and at some point, she also told them she had on an earlier occasion had sexual relations with a neighbor. She later denied the "neighbor" incident.

Julia did not report the Baker incident to authorities, but about a week later, she told her sister about it. Her sister in turn told their mother, who initiated a police investigation, which began on June 16, 2001. Apparently because of the nine-day period between the incident and the commencement of the investigation, no medical evidence of the incident was produced.

An Ames detective interviewed the defendant on June 20, 2001. The defendant acknowledged knowing Julia, but he denied picking her up at the pool, denied going to Char's, denied buying the alcohol, and denied going to the bridge with the teenagers. The defendant left the interview and immediately headed for California. He was ultimately arrested there and extradited to Iowa, where he was formally charged.

## II. *The Issue.*

The only issue we address concerns the scope of the cross-examination of Julia (the complaining witness). The defendant contends the district court abused its discretion in refusing to allow cross-examination of Julia regarding the prior, allegedly false, claim of a sexual encounter with a neighbor.

The defendant filed a notice of his intention to introduce evidence of the false statement, and the State filed a motion in limine to prevent it. The court, through Judge Ruigh, held a hearing prior to trial to resolve the issue. The court ruled that, while evidence of false claims of sexual activity would be relevant, such evidence would be unfairly prejudicial and therefore inadmissible. *See* Iowa R. Evid. 5.403. The court declined to decide whether evidence of false *claims* of prior sexual behavior is precluded as "past sexual behavior" under our rape-shield law. The court ruled that allowing evidence of the victim's false claim "would violate the spirit of the

rape-shield law," and in any event, the prejudice in such evidence would outweigh its probative value. Iowa Rule of Evidence 5.412(*b*), our rape-shield law, provides:

> Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence is either of the following[.]

While Julia initially claimed previous sexual activity with her neighbor, she later denied it, and the defendant introduced evidence at the pretrial hearing that the story was false. The district court found that the claim of prior sexual behavior was false, and the State does not challenge that finding. For purposes of our discussion, we assume the claim was false.[1]

## III. *Applicability of Rape–Shield Rule.*

In *State v. Alvey,* 458 N.W.2d 850 (Iowa 1990), a sexual-abuse case, the defendant argued that the complaining witness had previously made false claims of sexual abuse and that evidence should have been allowed on the issue of her credibility. The State argued that the proffered evidence "was in substance that of past sexual conduct and hence subject to exclusion under the rape shield law." *Alvey,* 458 N.W.2d at 852. We declined to decide whether the rape-shield rule applied, stat-

---

1. The district court's finding, and the State's apparent acquiescence, that the claim of prior sexual behavior was false, makes it unnecessary for us to address the procedures and standards to be applied in making that threshold determination. However, the determination can be critical. Valuable suggestions in making that determination are provided by *State v. Quinn,* 200 W.Va. 432, 490 S.E.2d 34 (1997). The analysis involves the formulations for a defendant's burden of showing falsity, i.e., whether falsity must be shown to be "demonstrably false," false to a "reasonable probability," false as a "supportable contention," or false by a "strong probability." The court cites cases advocating each of these standards. *Quinn,* 490 S.E.2d at 40. These suggestions may be incorporated by the court in addition to the *in camera* hearing on the admissibility provided by rule of evidence 4.12(*c*)(2).

ing "in either event it was one of relevancy." *Id.* We held that the district court had not abused its discretion in excluding the evidence because (1) "there was considerable doubt of the truth of the proffered testimony" regarding the victim's earlier statements; (2) four years had passed since the alleged incident; and (3) in the end, it was a question of weighing the probative value of the evidence against its "cost in devastating the victim's reputation and right to privacy." *Id.* at 852–53. We now revisit the rationale of *Alvey.*

■ The first question is whether false claims of prior sexual behavior fall within our rape-shield law. While we have not decided this specific issue, we have ruled that a prior act of a prosecuting witness indirectly relating to sex is not sexual conduct for rape-shield-law purposes. In *State v. Zaehringer,* 280 N.W.2d 416 (Iowa 1979), we held that a prior act of posing nude did not constitute a prior sexual act. We said:

> While there may be those to whom nude posing is sexually suggestive, to find nude posing to be "sexual conduct" within the meaning of [the rape-shield law] would be to place a strained and unreasonable construction on that statute.

*Zaehringer,* 280 N.W.2d at 420.

Virtually all cases considering the issue have found that false claims of prior sexual conduct do not fall within the coverage of rape-shield laws. For example, in *State v. Barber,* 13 Kan.App.2d 224, 766 P.2d 1288 (1989), the court stated:

> We are persuaded to join the majority of jurisdictions which have considered the question and hold the rape shield statute simply does not apply. The testimony sought to be introduced is not of prior sexual conduct. As a result, evidence of prior false accusations of sexual abuse may be admissible to impeach the credibility of the complaining witness.

*Barber,* 766 P.2d at 1289–90 (citation omitted). In *Clinebell v. Commonwealth,* 235 Va. 319, 368 S.E.2d 263, 264–65 (1988), the court held evidence of prior false accusations was admissible, despite a rape-shield law, and listed eight other jurisdictions reaching a similar conclusion. In *State v. Boggs,* 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), the court stated that "[b]ecause prior false accusations of rape do not constitute 'sexual activity' of the victim, the rape-shield law does not exclude such evidence. A great number of courts from other jurisdictions have also reached this conclusion." *Boggs,* 588 N.E.2d at 817–18. *See generally* Nancy M. King, Annotation, *Impeachment or Cross–Examination of Prosecuting Witness in Sexual Offense Trial by Showing That Similar Charges Were Made Against Other Persons,* 71 A.L.R.4th 469, 478–82 (1989).

In an Oregon case, the court adopted the following definition of past sexual behavior, which we approve in interpreting our rape-shield law:

> We hold that "past sexual behavior" means a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person.

*State v. Wright,* 97 Or.App. 401, 776 P.2d 1294, 1297–98 (1989).

We conclude that prior false claims of sexual activity do not fall within the coverage of our rape-shield law. Because a false allegation of sexual activity is not sexual behavior, such statements fall outside both the letter and the spirit of the rape-shield law. The next issue is whether the district court abused its discretion in

concluding that the unfair prejudice inherent in the evidence outweighed its probative value.

## IV. *The Prejudice Versus Probative Value Analysis.*

■ In examining the district court's weighing of the probative value of the evidence against its prejudicial effect, we must clarify *Alvey* in two respects. First, our observation in that case that "doubt of the truth of the proffered testimony" would *reduce* its probative value was incorrect. Actually, the more doubtful the witness's story about previous sexual behavior the *more* probative it is. In other words, if the alleged victim was untruthful about the earlier sexual encounter with a neighbor, a fact finder might well conclude she was untruthful in accusing this defendant as well.

■ The second aspect of *Alvey's* probative value/prejudice analysis that should be clarified regards the interests that are to be considered in the weighing process. Is it the interests of the state, the defendant, *and* the witness? We said in *Alvey:*

> The rape-shield law calls upon the trial judge to sort through proffered evidence of a victim's prior sexual activity and, on a case-by-case basis, to weigh whether it would yield more in the truth-finding process than it would *cost in devastating the victim's reputation and right to privacy.* The rule presupposes that much evidence which the accused wishes to place before a jury will be excluded. This is a cost the legislature has determined must be paid in order to accord evenhanded justice, not only to the accused, but also the accuser.

458 N.W.2d at 853 (emphasis added).

This language suggests that the witness's reputation and privacy interests are primary. However, outside a special law such as a rape-shield law (which does not apply here), courts weighing potential prejudice have shown little solicitude for the personal interests and sensibilities of nonparty witnesses. Wigmore has observed that testifying demands sacrifice of time and labor on the part of a witness,

> [o]r the sacrifice may be of his privacy, of the knowledge which he would preferably keep to himself because of the disagreeable consequences of disclosure. This inconvenience which he may suffer, in consequence of his testimony, by way of enmity or disgrace or ridicule or other disfavoring action of fellow members of the community, is also a contribution which he makes in payment of his duties to society in its function of executing justice. If he cannot always obtain adequate solace from this reflection, he may at least recognize that it defines an unmistakable axiom. When the course of justice requires the investigation of the truth, no man has any knowledge that is rightly private. All that society can fairly be expected to concede is that it will not exact this knowledge when necessity does not demand it. . . .

8 Wigmore, *Evidence in Trials at Common Law* § 2192, at 72 (McNaughton rev. 1961).

In this case, the witness might be embarrassed by evidence of her false account of a sexual encounter. However,

> a witness is not excused from answering a question on the sole grounds that the answer will be embarrassing, or will subject the witness to disgrace, infamy, or disrepute so long as the information sought is material or relevant. The constitutional provisions that no person may be compelled in a criminal case to give self-incriminating evidence has no application to testimony found disgracing or

embarrassing to the witness or subjecting the witness to opprobrium.

98 C.J.S. *Witnesses* § 541, at 514 (2002) (footnotes omitted).

In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), a key witness for the state was a juvenile who had a record of juvenile offenses. Alaska's law protected the anonymity of juvenile offenders. The defendant sought to cross-examine the witness with regard to his juvenile record, hoping to establish possible bias on the part of the witness. The trial court refused to allow the testimony on the ground disclosure of a juvenile record was prohibited by a state statute. The defendant was convicted and appealed. The Alaska Supreme Court affirmed, but the United States Supreme Court reversed, stating:

> We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. Here, however, [the defendant] sought to introduce evidence of [the witness's] probation for the purpose of suggesting that [the witness] was biased and, therefore, that his testimony was either not to be believed in his identification of [the defendant] or at least very carefully considered in that light.
>
> ... [W]e conclude that the State's desire that [the witness] fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the right of [the defendant] to seek out the truth in the process of defending himself.

*Davis,* 415 U.S. at 319–20, 94 S.Ct. at 1112, 39 L.Ed.2d at 355–56 (citation omitted).

Even a witness's fear of personal injury generally does not relieve the witness of the duty to provide evidence. *See Commonwealth v. Johnson,* 365 Mass. 534, 313 N.E.2d 571, 577 (1974) ("Relief of witnesses on this ground would encourage intimidation of those in possession of information and proclaim a sorry confession of weakness of the rule of law.").

Applying the principles of these authorities to the case before us, we conclude that, while the complaining witness might have been embarrassed by being shown to be a boaster, or even a liar, about a previous sexual experience, this is not the kind of unfair prejudice that will outweigh the probative value of clearly relevant evidence. This is especially so when, as in this case, the countervailing right of a defendant to present a defense to a criminal charge is at stake. *See Davis,* 415 U.S. at 320, 94 S.Ct. at 1112, 39 L.Ed.2d at 356; *see also State v. Cox,* 298 Md. 173, 468 A.2d 319, 324–25 (1983) (holding it was reversible error to refuse cross-examination of the victim regarding prior false claims); *Commonwealth v. Bohannon,* 376 Mass. 90, 378 N.E.2d 987, 990–91 (1978) (same).

We conclude that the district court abused its discretion in excluding the evidence of the prior false claim of sexual behavior. Accordingly, we vacate the decision of the court of appeals, affirm the judgment of the district court on the charge of furnishing alcohol to minors, reverse on the sexual-abuse charge, and remand for trial of the charge of sexual abuse.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**