**IN THE COURT OF APPEALS OF IOWA**

No. 13-1299
Filed November 26, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLIFF ALLEN LOWE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Appanoose County, Annette J.

Scieszinski, Judge.

        Cliff Lowe appeals his convictions, judgments, and sentences for two

counts of conspiracy to manufacture methamphetamine.  **REVERSED AND**

**REMANDED.**

        Amanda Demichelis of Demichelis Law Firm, P.C., Chariton, for appellant.

        Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant

Attorney General, and Susan Daniels, County Attorney, for appellee.

        Heard by Doyle, P.J., and Bower and McDonald, JJ.

**DOYLE, P.J.**

Cliff Lowe appeals his convictions, judgments, and sentences for two counts of conspiracy to manufacture methamphetamine. Among other things, he contends the State failed to prove the conspiracy element of the crime in each count and, as a result, the evidence was insufficient to support his convictions. Upon our review, we agree. We therefore reverse Lowe's convictions and remand for entry of judgment of acquittal. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003); *State v. Caslavka*, 531 N.W.2d 102, 108 (Iowa 1995).

### I. Background Facts and Proceedings.

Considering all of the record evidence in the light most favorable to the State, "including all reasonable inferences that may be fairly drawn from the evidence," *see State v. Showens*, 845 N.W.2d 436, 439-40 (Iowa 2014), a reasonable jury could have found the following facts.

Pseudoephedrine is a key ingredient used in the manufacture of methamphetamine. *See United States v. Yager*, 328 F.3d 1008, 1009 (8th Cir. 2003). Both federal and Iowa law require retailers to obtain, among other things, identification information and the signature of persons purchasing pseudoephedrine. *See* 21 U.S.C. § 830; Iowa Code § 124.212A (2013) (requiring pharmacists to prepare electronic log to record transactions). In Iowa, the information collected is stored in the National Precursor Log Exchange (NPLEx) system database, which is accessible to law enforcement officers. The NPLEx system keeps track of not only purchases of pseudoephedrine, but it also blocks persons from purchasing pseudoephedrine if the person has exceeded the amount allowed to be purchased by law, and it logs that information.

In the summer of 2012, Centerville police officers assigned to the South Central Iowa Drug Task Force were monitoring the NPLEx system, and they observed that several residents of the small town Udell, Iowa, located near Centerville, were regularly purchasing pseudoephedrine. These residents included Lowe, as well as Jodi Sindt and Nunzio Lloyd. Sindt and Lloyd lived close to a warehouse owned by Lowe's mother. Based upon these individuals' purchases of pseudoephedrine, the taskforce began an investigation of Lowe, Sindt, and Lloyd, including monitoring any new pseudoephedrine purchases and surveilling the individuals' residences, as well as Lowe's mother's warehouse.

The NPLEx system records show from August 16, 2010, to January 17, 2013, Sindt purchased approximately fifty-six boxes of pseudoephedrine. During the same time period, the records show Lowe purchased twenty-six boxes, and Lloyd purchased twenty-four boxes. Neither Lowe nor Lloyd were blocked during that three-year time period from purchasing pseudoephedrine; all of these purchases were legal.

In addition to the NPLEx system, officers received logs kept by several retailers when items known to be used in the manufacture of methamphetamine, such as muriatic acid and cold compresses, were purchased. Cold-compress logs kept by one retailer showed Sindt purchased approximately sixteen compresses from June 14, 2012, to January 16, 2013. During the same time period, the logs show Lowe purchased two. The sulfuric/muratic-acid/lye logs kept by another retailer from December 29, 2011, to January 11, 2013 showed Sindt purchased either acid or lye four times, and Lowe one time. Lloyd's name does not appear on any of these logs.

In November 2012, officers involved in the investigation received an email notification from the NPLEx system that Sindt had recently purchased pseudoephedrine. Thereafter, the officers went to surveil her, and they observed her vehicle at Lowe's residence. The officers "sat there for a while and nothing was happening," so they left. This was the only time Sindt was seen at Lowe's residence during the officers' surveillance.

Additionally, the officers also surveilled the warehouse, and one day they observed Lowe "going back and forth . . . between the warehouse, his house, and [Lloyd's] house and burning . . . some trash or something in the field that was south of the warehouse." Lowe was also observed at Lloyd's residence one time.

In January 2012, officers obtained search warrants for several locations, including the residences of Lowe and Sindt and the warehouse owned by Lowe's mother. During the search of Lowe's residence and the warehouse, several items and equipment used in manufacturing methamphetamine were discovered, along with two items each containing at least five grams of methamphetamine. However, no evidence of any "evidentiary value" was found at Sindt's residence, such as evidence of manufacturing or use of methamphetamine. Lowe was the only person discovered at the warehouse at the time of the search. As a result of the investigation, seven people were arrested and charged that day, including Lowe, Lloyd, and Sindt.

On March 5, 2013, Lowe was charged by trial information with two counts of conspiracy to manufacture, deliver, and/or possess with intent to deliver

methamphetamine, in violation of Iowa Code sections 124.401(1)(a)(7)(a) and .413.[1] Counts I and II asserted the same facts, specifically, that Lowe,

> on or about January 22, 2013, . . . did unlawfully and willfully unlawfully act with, enter into a common scheme, design with or conspire with one or more persons to manufacture, deliver or possess with intent to deliver . . . more than [five] kilograms of a mixture or substance containing a detectable amount of [the controlled substance] methamphetamine.

No lesser-included crimes were charged.

The matter proceeded to trial in May 2013. Sindt testified on behalf of the State concerning her involvement with Lowe pursuant to a plea agreement she entered into with the State. Sindt admitted at trial she had purchased one pack of pseudoephedrine pills for Lowe in December 2012, for which he paid her $100, but she adamantly testified that was the only time she ever bought anything for Lowe. She admitted she had given Lowe four or five pseudoephedrine pills "a couple of times" in 2012 when he was at her residence and had asked for them. She also admitted she had given him some of her empty soda bottles in 2012 after he told her they were perfect for "shaking" and he asked her for them. In addition, she admitted she once rode along with another person she knew was buying an over-the-counter cleaning product used in manufacturing methamphetamine for Lowe. She testified she suspected Lowe was manufacturing methamphetamine, but she denied any other involvement with Lowe or ever being present when he manufactured methamphetamine. However, Sindt fully admitted she purchased pseudoephedrine regularly for another person who did manufacture methamphetamine, and she testified she

---

[1] Two other counts alleged were ultimately dismissed and are not relevant to this appeal.

had been present when that person had cooked methamphetamine "at least ten times." She even testified that Lowe had become angry with her once because she bought pseudoephedrine for the other manufacturer and not for him. Sindt testified the other manufacturer sometimes paid her in methamphetamine, which she then sold.

Lloyd did not testify. Other than his purchases of pseudoephedrine, the only trial testimony offered connecting him to Lowe in any way was that one officer, during his surveillance of the warehouse, observed Lowe "going back and forth . . . between the warehouse, his house, and [Lloyd's] house and . . . burning some trash or something in the field that was south of the warehouse." The officer testified, based upon his training and experience, people who "are manufacturing meth usually or sometimes would try to burn the bottles or blister packs or other remnants of a lab to get rid of the evidence." Additionally, an officer testified one day while surveilling Lowe, he observed that Lowe went to Lloyd's "residence at least once."

At the close of the State's evidence, Lowe moved for a judgment of acquittal, arguing insufficient evidence had been presented to prove, beyond a reasonable doubt, that Lowe entered "into a common scheme, design with or conspire[d] with one or more persons to manufacture, deliver, or possess with intent to deliver a controlled substance on or about January 22, 2013." Additionally, Lowe asserted he was being placed in double jeopardy for being charged twice with conspiracy to manufacture, as stated in counts I and II, based upon the exact same facts. The State resisted, asserting there was sufficient evidence and that methamphetamine in an amount above five grams was found

in two separate and distinct objects, allowing the State to charge for two separate offenses.  The court denied Lowe's motion.  At the close of Lowe's case-in-chief, he reasserted his motion for a judgment of acquittal on grounds previously urged, and the court again denied the motion.

The jury returned a verdict finding Lowe guilty of both conspiracy charges. He now appeals, contending, among other things, insufficient evidence of a conspiracy was presented to prove that element of both counts beyond a reasonable doubt.

## II.  Scope and Standards of Review.

We review sufficiency-of-the-evidence challenges for correction of errors at law.  *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014).  We consider all evidence in the record, both favorable and unfavorable to the verdicts, as well as all reasonable inferences that may be fairly drawn from the evidence.  S*ee Showens*, 847 N.W.2d at 439-40.  We uphold the jury's verdicts if they are supported by substantial evidence in the record.  *See id.* at 440.  "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).  "Direct and circumstantial evidence are equally probative."  Iowa R. App. P. 6.904(3)(p). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence."  *Thomas*, 847 N.W.2d at 442.

### III. Discussion.

Iowa Code section 124.401(1) makes it a crime "for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance . . . *or conspire with one or more other persons* to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance." (Emphasis added.) Subsection (b)(7) classifies the offense as a "B" felony if the crime involves "[m]ore than five grams but not more than five kilograms of methamphetamine." Iowa Code § 124.401(1)(b)(7). Under the definition of conspiracy set forth in Iowa Code section 706.1, to convict Lowe of conspiracy to manufacture a controlled substance, the State was required to prove (1) Lowe agreed with one or more persons that one or both of them would manufacture or attempt to manufacture methamphetamine; (2) Lowe entered into such an agreement with the intent to promote or facilitate the manufacture of methamphetamine; (3) one of the parties to the agreement committed an overt act to accomplish the manufacturing of methamphetamine; and (4) the alleged co-conspirator was not a law enforcement agent or assisting law enforcement when the conspiracy began. *See also State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013). The fighting issue here is whether the State proved Lowe agreed with Sindt or Lloyd that he would manufacture or attempt to manufacture methamphetamine.

The Iowa Supreme Court has described an agreement to form a conspiracy as a "concert of free wills," "union of the minds of at least two persons," and "a mental confederation involving at least two persons." *Id.* at 159; *State v. Fintel*, 689 N.W.2d 95, 102 (Iowa 2004); *State v. Weatherly*, 679 N.W.2d

13, 17 (Iowa 2004); *State v. Speicher*, 625 N.W.2d 738, 742 (Iowa 2001); *State v. Boyer*, 342 N.W.2d 497, 499 (Iowa 1984).  Because "a conspiracy is by nature clandestine, it will often rest upon circumstantial evidence and inferences drawn from that evidence."  *Kern*, 831 N.W.2d at 159; *State v. Corsi*, 686 N.W.2d 215, 219 (Iowa 2004).

> Circumstantial evidence includes the declarations and conduct of the alleged conspirators and all reasonable inferences arising from such evidence.  Importantly, an agreement need not be—and often times is not—formal and express.  A tacit understanding—one 'inherent in and inferred from the circumstances'—is sufficient to sustain a conspiracy conviction.

*Speicher*, 625 N.W.2d at 742 (internal citations omitted). Nevertheless:

> Circumstantial evidence of an agreement must be based on more than suspicion.  Similarly, "circumstantial evidence that proves mere presence at the scene of the crime or association with those involved in the crime is not sufficient to show an agreement."  Mere presence or general association creates no more than "conjecture and speculation" of criminal complicity.

*Kern*, 831 N.W.2d at 159 (internal citations omitted).  Although prior case law on this issue is instructive, conspiracy is an inherently fact-based crime, which requires us to look to the particular facts, circumstances, and reasonable inferences in this case.  *See Weatherly*, 679 N.W.2d at 18.

Lowe contends the supreme court's opinion in *Speicher* controls his appeal and directs a conclusion that insufficient evidence existed to support his conspiracy conviction.  The court discussed its decision in *Speicher* a few years later in *Weatherly*.  *See id.* at 17-18 (discussing *Speicher*, 625 N.W.2d at 740-43).  There, the court explained:

> In *Speicher*, police officers observed the defendant smoking a cigarette outside of the garage of a home owned by Kelly Page.  Police suspected the garage was being used to manufacture meth

because they could smell ether around the garage. The police subsequently observed Speicher and Page enter the garage and eventually leave together. As the two men exited, they detected the presence of the police and ran. After they were captured, Page gave the officers permission to search the garage. In consenting to the search, Page stated, "'I may as well sign [the consent-to-search form], but I want you to understand that I was manufacturing the meth for my own use.'" The search divulged "numerous devices and items used to make" meth, including "one air-purifying respirator and a pair of work gloves."

Both Page and Speicher were charged with conspiracy to manufacture meth and Speicher was later convicted after a jury trial. We reversed his conspiracy conviction. We determined that "substantial circumstantial proof of conspiracy . . . [was] woefully missing in the record." We observed that a rational juror could find that Speicher was in the garage where a meth lab was located, smelled of ether, and ran when made aware of the police. We concluded, however, that these and other factors would only "permit a jury to infer from Speicher's presence in the garage that he knew Page was manufacturing methamphetamine." No further evidence existed to show "that Speicher agreed with Page to participate in the manufacturing process."

The holding in *Speicher* instructs that proof of a conspiracy to manufacture meth is not established when two people are seen together at a meth lab, smell of ether, and flee after seeing the police. Additional evidence is needed to show conspiracy between the two or another person.

*Id.* (internal citations and emphasis omitted).

Since *Speicher*, the supreme court has decided several conspiracy-to-manufacture-controlled-substances cases. *See, e.g.*, *Kern*, 831 N.W.2d at 159; *State v. Nitcher*, 720 N.W.2d 547, 557 (Iowa 2006); *Fintel*, 689 N.W.2d at 102; *Corsi*, 686 N.W.2d at 219; *Weatherly*, 679 N.W.2d at 17. In each of the cases since *Speicher*, the court has upheld conspiracy convictions, distinguishing each case's facts from *Speicher*. *See Kern*, 831 N.W.2d at 160 (concluding jury could infer an agreement to conspire to manufacture marijuana where defendant lived where an extensive marijuana-growing operation was found and knew of the operation); *Nitcher*, 720 N.W.2d at 557 (concluding jury could infer an agreement

to conspire to manufacture methamphetamine where defendant was discovered at another person's residence where a meth lab was found, the defendant's clothing was found at the residence smelling of ether and located near coffee filters, and the defendant's fingerprint was found on a pie plate that contained pseudoephedrine and triprolidine at the residence); *Fintel*, 689 N.W.2d at 102 (concluding an agreement could be inferred in part, even if the defendant took no part in the actual manufacture of the controlled substance, because the defendant "knew methamphetamine was being manufactured in his apartment" and the "defendant's apartment was littered with the necessary ingredients and utensils for manufacturing methamphetamine," permitting the jury to infer a tacit agreement between the defendant and the manufacturer); *Corsi*, 686 N.W.2d at 219 (concluding jury could infer an agreement to conspire to manufacture methamphetamine where defendant was found at another person's apartment where methamphetamine was being cooked); *Weatherly*, 679 N.W.2d at 18 (concluding jury could infer an agreement to conspire to manufacture methamphetamine where defendant was found fleeing a hotel room rented by another person where a meth lab was found, and the defendant carried with him "a distinctive portion of the meth lab"). The present case is distinguishable from these cases, given the unusual facts of the case.

Here, viewing the evidence in the light most favorable to the State, there is no question the State presented sufficient evidence to show Lowe committed an overt act to accomplish the manufacturing of methamphetamine, element (3) listed above. The items seized at Lowe's residence and the warehouse he frequented were commonly used in methamphetamine labs, and actual

detectable amounts of methamphetamine were found. Additionally, he purchased unusual amounts of pseudoephedrine and other materials known to make meth. Sindt testified she believed Lowe manufactured meth. However, unlike the cases after *Speicher,* no other person was found at Lowe's residence or the warehouse, where the lab and manufacturing supplies were found. The only evidence presented connecting Sindt to Lowe's manufacturing of methamphetamine was that she gave him her empty soda bottles and one time in December 2012 she bought for him a box of pseudoephedrine. The facts that Lloyd and Sindt bought what could be considered large amounts of pseudoephedrine between 2011 to 2013 and lived in this small town with Lowe near the warehouse where a lab was found are not evidence they agreed with Lowe to help him manufacture methamphetamine in January 2013. The evidence that Lowe had a burn pile near Lloyd's residence does not evidence an agreement between the two to manufacture methamphetamine in January 2013. Neither Lloyd or Sindt were found at the warehouse or Lowe's residence where the labs were found. The bottle found at the warehouse used for cooking methamphetamine was not the type of soda bottle Sindt testified she gave Lowe. There was no evidence presented finding either Lloyd's or Sindt's fingerprints on any of the materials found at Lowe's residence or the warehouse, nor was there any evidence Lowe's fingerprints were found at Lloyd's or Sindt's residences on potential methamphetamine-manufacturing materials. In fact, the testimony at trial showed there was no evidence of any methamphetamine use or manufacturing thereof at Sindt's house. There was no testimony about what, if anything, was found at Lloyd's house and how that could possibly be tied to

Lowe's manufacturing of methamphetamine. There was no testimony that Sindt or Lloyd possessed methamphetamine. Our review of the record causes us to conclude the jury's finding of guilt as to the crime of conspiracy to manufacture a controlled substance was not supported by substantial evidence.

The type of circumstantial proof of conspiracy evident in the supreme court cases following *Speicher* is woefully missing in the record before us. Without proof of any involvement from which to infer an agreement, this essential element of the offense rests on nothing but conjecture and speculation. The State has failed, as a matter of law, to tender substantial proof on each of the essential elements of the offense.

### *IV. Conclusion.*

We have considered all issues presented and conclude that, even viewed in the light most favorable to the State, the evidence fell short of generating a jury question on the issue of conspiracy.[2] Lowe's motion for judgment of acquittal should have been sustained by the district court. Accordingly, we reverse the convictions, judgments, and sentences, and we remand the case to that court for entry of a judgment of acquittal. *See, e.g.*, *Dullard*, 668 N.W.2d at 597; *Caslavka*, 531 N.W.2d at 108.

**REVERSED AND REMANDED.**

---

[2] Because we find the sufficiency-of-the-evidence issue to be dispositive to this appeal, we need not address Lowe's other arguments.