**IN THE COURT OF APPEALS OF IOWA**

No. 14-0727
Filed August 5, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERIC EDWARD HARTMAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Davis County, Randy S. DeGeest,

Judge.



        Eric Hartman appeals from the judgment and conviction entered after a

jury found him guilty of assault with intent to commit sexual abuse.  **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Rachel C. Regenold,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney

General, Rick L. Lynch, County Attorney, and Ashley Leyda, Assistant County

Attorney, for appellee.



        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Following a jury trial, Eric Hartman was found guilty of assaulting his fifteen-year-old stepdaughter, V.V., with the intent to commit sexual abuse. He appeals his conviction, contending the district court should not have excluded testimony from Hartman's friend who claimed V.V. had told him her biological father had touched her inappropriately. Hartman argues this testimony was evidence of a prior false sexual allegation by V.V. relevant to her credibility and admissible. Additionally, Hartman asserts his trial counsel was ineffective for failing to request a limiting instruction concerning V.V.'s testimony that Hartman had engaged in other acts of a sexual nature with her. We affirm, and we preserve his ineffective-assistance-of-counsel claim for possible postconviction-relief proceedings.

### I. Background Facts and Proceedings.

In 2013, and as later amended in 2014, the State charged Hartman with third-degree sexual abuse and its lesser-included offenses. The amended trial information alleged Hartman "on or about July 20, 2013, through August 28, 2013, . . . did unlawfully and willfully sexually abuse his stepdaughter, V.V., age [fifteen], by performing a sex act against her will or by force." On February 7, 2014, Hartman filed his notice of defense witnesses, which included L.F., who was a good friend of the family and a person V.V. had had a crush on over the years. The notice did not indicate what evidence L.F. would provide.

On March 7, 2014, the State filed a motion in limine concerning L.F., stating it believed Hartman might "seek to elicit testimony from [L.F.] regarding comments that [V.V.] allegedly made to him regarding her [biological father]

allegedly touching her inappropriately." The State believed Hartman would try to use the alleged comments "to portray the alleged touching in a sexual manner and use [L.F.'s] testimony to impeach [V.V.]." The State asserted that Iowa's rape-shield rule, embodied in Iowa Rule of Evidence 5.412, prohibited L.F.'s potential testimony because Hartman could not establish that V.V. actually made such a statement to L.F. and, even if she did, that her statement was false beyond a preponderance of evidence. It also argued that L.F.'s potential testimony about a statement made by V.V. would be inadmissible hearsay.

Hartman filed his resistance on March 18, 2014, the day of trial, arguing L.F.'s testimony met the necessary requisites. As support for his argument, he attached a transcript of a portion of L.F.'s interview with the investigating law enforcement officer wherein the following exchange occurred:

> [THE OFFICER]: I've got some kind of hard questions to ask you. I can't really tell you what the actual investigation's about, just other than it concerns you, obviously.
> But it's just, you know, a situation in general.
> [L.F.]: Okay.
> [THE OFFICER]: Has [V.V.] ever said anything to you about like her relationship with her dad or with her mom or anything along those lines?
> [L.F.]: She said things about her real dad. But, you know, I think she had rough times over there, I think. You know, I don't know if it's true or not. She's said that he's touched her and stuff like that before.
> [THE OFFICER]: That her real dad has?
> [L.F.]: Her real dad, yes.
> [THE OFFICER]: What do you mean by "touched"?
> [L.F.]: I—That's—I'm not sure.
> She just said that he's touched her. That she didn't think it was appropriate. And I'm like, "Okay. Have you told [Hartman] about this?" "No, I'm kind of scared to." So I—
> [THE OFFICER]:—Okay. Did she—Well, I guess what I'm saying is—I mean, I guess—So you were the one talking to her?
> [L.F.]: Yeah.

Based upon this conversation, Hartman asserted L.F. "clearly had no idea why he was being interviewed" by the officer and volunteered that V.V. had previously told him her biological father had touched her inappropriately. Because V.V. denied to her interviewer at the child protection center that she had been sexually abused by anyone other than Hartman, Hartman asserted V.V.'s alleged statement to L.F., that she had been abused by someone other than Hartman, was therefore a "prior false allegation" that was not excluded under the rape-shield rule and thus admissible.

The matter was taken up before the district court immediately before the trial began. Ultimately, the district court ruled L.F.'s testimony should be excluded, simply explaining: "It's just not appropriate to have—the weight of that testimony would be not appropriate to put in a trial of this matter, so I am going to grant the State's motion in limine on that issue."

Trial commenced thereafter. V.V. and Hartman both testified. V.V. testified Hartman raped her on an evening sometime in August 2013. She testified that on that day, Hartman had custody of his child, V.V.'s stepsibling, but needed to return the child to the child's mother's home at the end of the day. V.V. testified that she had her driver's instruction permit, and Hartman let her drive him and the child to the mother's house. After dropping the child off, she and Hartman exchanged places, and he drove. While driving, Hartman brought up her crush on L.F. and text messages she and L.F. had exchanged. V.V. testified that Hartman told her that she had hurt him and that she had to make it up to him. Hartman drove out to his mother's house, located in a rural area, and parked the vehicle near a dilapidated barn around ten p.m. at night. She testified

that Hartman then raped her, and then he drove them home. However, she testified she did not tell anybody about the rape until November 2013.

V.V. admitted she had a history of depression and, since she was eleven, had engaged in self-injury by cutting herself as a stress-coping mechanism. Though she had stopped cutting for two years, she testified that in November 2013, after breaking up with her boyfriend, she began cutting again, and she took pictures of her injuries and sent them to her ex-boyfriend. Hartman found the pictures the next morning on the family's computer and showed V.V.'s mother, Hartman's wife, the pictures. V.V. testified her mother and Hartman woke her up and confronted her about her injuries. When Hartman left the room, V.V. told her mother she had something she wanted to tell her, but she wanted to wait until Hartman left the residence. Her mother told her to tell her, and V.V. told her mother that Hartman had raped her.

V.V. testified that prior to the rape, since she was around thirteen or fourteen, she had become uncomfortable around Hartman. She testified he would walk into her room when she was changing or into the bathroom when she was getting out of the shower. She testified he exposed himself to her, and while camping, he put his hands down her pants and touched her under her underwear. She testified that another time while she was driving, Hartman put his hand on her thigh. She also testified that she told the woman who interviewed her at child protective services that nothing like this rape incident had ever happened to her before. She testified she had told her best friend about the sexual acts, but she did not tell her about the rape until the day she told her mother. V.V. explained her best friend's sister, a law enforcement officer, heard

her and her friend talking on the phone, and the sister reported the rape to law enforcement officials.

The investigating officer testified Hartman, V.V.'s mother, L.F., and V.V.'s middle school counselor each told him V.V. had "an issue with truth from time to time." However, the investigating officer testified V.V.'s accounts of the rape during two separate interviews at the child protection center were consistent. The officer further testified that although there was some discrepancies between what V.V. reported happened and what V.V.'s friend reported V.V. told her had happened, V.V. and her friend's reports were generally consistent with each other.

Hartman testified and denied raping V.V. or touching her inappropriately, and he challenged V.V.'s credibility. He told the investigating officer V.V. was a habitual liar and that she had "an imagination." However, Hartman admitted that one night he had driven V.V. around to talk about V.V.'s obsession with boys, her texting L.F., and her attitude. He told the investigating officer that he was driving a Suburban that night, and to conserve gas, he drove them out to his mother's farm to talk, where V.V. said the rape occurred. He denied that that happened; he told the officer they only talked, but he did not know how much of the conversation V.V. heard because "she was very irate that night," "doin' her growlin,' and thrashin' around, crying." He told the officer that by the end of their conversation, V.V. seemed to understand and acted like everything was okay. Hartman's testimony suggested V.V. made up the story to divert the attention from her and her self-inflicted injuries or because she was seeking her biological father's love and attention.

V.V.'s mother testified she was not sure what the truth was and "prayed [the jury] would help [her] figure this out." She testified she wanted to believe both V.V. and Hartman, but she testified V.V.'s account of the rape to her was not consistent, that V.V. told her that she was raped at an earlier time than the time V.V. reported the rape occurred during the investigation. V.V.'s mother also testified V.V. was very angry and upset when she and Hartman confronted her about the pictures of her self-harm.

V.V.'s middle school counselor testified V.V. did not always tell her the "whole story" or the "whole truth." She did not specifically recall any particular untruths V.V. told, but she testified V.V. had never made any comments to her accusing "anybody of rape or something like that." She admitted at the time of trial she had not seen V.V. for two years, and she testified she would not speculate as to whether V.V.'s rape allegation was accurate or not.

V.V.'s former therapist testified she started seeing V.V. in August 2012, and during her initial assessment interview with V.V. and V.V.'s mother, neither V.V. nor her mother voiced any concerns about sexual or physical abuse. V.V. and her mother both identified V.V.'s behavior traits to include lying, a violent temper, hostility and anger, self-injury, impulsivity, and sadness and self-isolation. The counselor testified that V.V. admitted to her that V.V. had been untruthful at times, and in the year or so that she worked with V.V., V.V. never expressed to her any sexual concerns, feelings of discomfort, or even dislike of Hartman. When asked what V.V. lied about, the counselor identified that V.V. had lied about skipping school with her friends and throwing a party.

The matter was submitted to the jury, and it subsequently returned a verdict of guilty to the lesser-included offense of assault with intent to commit sexual abuse. Hartman now appeals.

## II. Scope and Standards of Review.

The district court's rulings on the admissibility of evidence, including admissibility under rule 5.412, are reviewed for abuse of discretion. *See State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014); *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006). To the extent Hartman asserts constitutional claims, our review is de novo. *See Edouard*, 854 N.W.2d at 431.

## III. Discussion.

On appeal, Hartman asserts the district court should not have excluded testimony from L.F. about an alleged statement V.V. made because, as his argument goes, the evidence was admissible as a prior false sexual allegation by V.V. and relevant to her credibility. Additionally, Hartman asserts his trial counsel was ineffective for failing to request a limiting instruction concerning V.V.'s testimony that Hartman had engaged in other acts of a sexual nature with her. We address his arguments in turn.

## A. Exclusion of L.F.'s Testimony.

On appeal, Hartman asserts he satisfied his burden to overcome the rape-shield law "through the transcript portions offered by Hartman demonstrating that L.F. recalled V.V. saying that her father touched her inappropriately and that she later denied ever being touched inappropriately by anyone other than Hartman." The State disagrees, arguing Hartman failed to prove by a preponderance of the evidence that a prior allegation was made or that it was false. However, the

State first contends Hartman failed to preserve error on the issue because he "did not timely provide notice before trial and did not serve [V.V.]" as required by Iowa Rule of Evidence 5.412(c)(1).

### 1. Error Preservation.

The rape-shield rule prevents the introduction of reputation or opinion evidence of a victim's past sexual behavior, as well as substantially limiting the admissibility of past incidents of the victim's sexual behavior. *See* Iowa R. Evid. 5.412(a), (b); *see also Millam v. State*, 745 N.W.2d 719, 722 (Iowa 2008). "The purpose of this rule is to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters." *Edouard*, 854 N.W.2d at 448-49 (internal citation and quotation marks omitted). However, "prior false claims of sexual activity do not fall within the coverage of our rape-shield law." *Alberts*, 722 N.W.2d at 409 (citing *State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004)). Once a statement concerning sexual activity is determined to be false, the activity cannot be "past sexual behavior," and thus the statement concerning the activity is not "within the meaning of our rape-shield law." *See id.* at 410. To strike a balance between the alleged victim's privacy and a defendant's use of the statement as part of the defendant's defense, the Iowa Supreme Court held "a criminal defendant wishing to admit such evidence must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a preponderance of the evidence." *Id.* at 409. Nevertheless, even if a defendant meets the requisite

showing, this evidence still "remains subject to all other applicable evidentiary requirements and considerations." *Id.* at 410.

That being said, the supreme court in *Alberts* included a footnote concerning the rape-shield rule's procedural requirements. *See id.* at 409-10 n.3. The court noted:

> Under our rape-shield law, a defendant intending to offer evidence of specific instances of the complaining witness's past sexual behavior must first make a written motion to offer such evidence not later than [fifteen] days before the trial date. Iowa R. Evid. 5.412(c)(1). *This procedural requirement would also apply to allegedly false claims of sexual conduct* because they are covered by the rape-shield law *unless proven to be false*. The motion must be accompanied by a written offer of proof and the trial court must order a hearing in chambers to determine the admissibility of such evidence. *Id.* 5.412(c)(2).

*Id.* (emphasis added); *see also* Iowa R. Evid. 5.412(c).

These procedural requirements have not changed, and it is this part of the rule upon which the State asserts Hartman failed to preserve error. Specifically, the State argues that because Hartman did not file a rule 5.412(c)(1) motion stating his intent to offer under rule 5.412(b) evidence of specific instances of the alleged victim's past sexual behavior and that motion was not filed at least fifteen days before trial, he failed to preserve error.[1] However, the State did not

---

[1] This seems a bit of a conundrum, because, as stated above, a false report of sexual abuse is not protected by the rape-shield law. *See Alberts*, 722 N.W.2d at 409 ("[A] falsity determination simply means the statements are not 'past sexual behavior' within the meaning of our rape-shield law."); *see also Millam*, 745 N.W.2d at 723 (Iowa 2008) ("In this case, the wording of the rape-shield law itself is quite clear: it refers to sexual behavior, and quite simply, claims of sexual abuse are not sexual behavior."). Thus, a defendant seeking to admit a false sexual claim would arguably have no duty to file a timely notice under rule 5.412(c), because the evidence of the false report would not fall under rule 5.412(b). *See id.*; *see also* Iowa R. Evid. 5.412 (b), (c). However, the procedural requirement does apply to "*allegedly* false claims of sexual conduct . . . unless *proven* to be false." *Alberts*, 722 N.W.2d at 409-10 n.3 (emphasis added). Consequently, the issue becomes when must that determination take place?

challenge Hartman's failure to comply with rule 5.412(c) before the trial court. On appeal, the State acknowledges this, but it asserts it "is not limited to the reasons proffered by the county attorney below" because "evidentiary rulings may be upheld on appeal on any basis, whether urged below or not," citing *DeVoss v. State*, 648 N.W.2d 56, 62-63 (Iowa 2002), and *State v. Hinkle*, 229 N.W.2d 744, 748 (Iowa 1975).

While it is true that in *DeVoss* the supreme court confirmed it would "continue to honor the [error preservation] exception involving [evidentiary] rulings," it expressly determined it would "not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the only ground available to uphold a district court ruling." 648 N.W.2d at 63. The State itself states in its brief, "[i]n short, the notice requirement is an important substantive component of [r]ule 5.412—not a trivial procedural hurdle." We agree that the notice requirements of the rule are important, but regardless of whether it is a substantive element, as asserted by the State, or a procedural requirement, as described by the supreme court in *Alberts*, the State did not argue this issue before the district court. *See Alberts*, 722 N.W.2d at 409-10 n.3. Consequently, like in *DeVoss*, the State's failure to do so waives Hartman's

While filing a rule 5.412(c) notice fifteen days in advance of trial where a defendant seeks to introduce evidence of a "prior false allegation" concerning a victim's past sexual history would definitely be a better practice, particularly where the evidence's veracity might be contested, the supreme court's two-part test set out in *Alberts* only required that the defendant "make a threshold showing to the trial judge outside the presence of the jury." 722 N.W.2d at 409. Hartman's argument to the trial court was made outside the presence of the jury, and the court determined the evidence Hartman sought to enter was inadmissible. Because the court was able to address the issue before trial, Hartman seems to have met the minimal procedural requirements. *But cf. State v. Schondelmeyer*, No. 14-0621, 2015 WL 1817030, at *4 (Iowa Ct. App. Apr. 22, 2015) (finding "Schondelmeyer failed to file the required written motion" under Iowa R. Evid. 5.412(2) as to a prior false claim by the victim).

failure to comply with rule 5.412(c), assuming he was so required. *See* 648 N.W.2d at 63. We therefore proceed to the merits of Hartman's claim.

### 2. Merits.

To permit L.F. to testify about V.V.'s "false" statement, Hartman had to establish to the trial court that V.V. actually made the statement to L.F. and her statement was indeed false "beyond a preponderance of the evidence." *See Millam*, 745 N.W.2d at 722; *Alberts*, 722 N.W.2d at 409. The trial court's ruling on the matter did not address either element; rather, it found L.F.'s testimony would not be "appropriate," seeming to suggest that any such statement was not relevant or overly prejudicial. The State advances the same on appeal—that even if Hartman demonstrated that the alleged statement was made and was false, it would not be admissible for these and other evidentiary reasons. However, we disagree with the State to the extent that *if* Hartman did indeed meet the requisite showing, the supreme court's ruling in *Millam* supports the admissibility of such statement. *See* 745 N.W.2d at 722-24.

In *Millam*, the supreme court found Millam's trial counsel was ineffective for not offering evidence of the alleged victim's prior false claims of sexual abuse, entitling him to a new trial. *See id.* at 724. There, the alleged victim's mother told investigators that the victim "had made similar accusations against one of her mother's previous boyfriends," and the victim "later recanted those accusations." *Id.* at 722. The supreme court noted the victim's "own mother doubted her claims against Millam due to her prior false claims." *Id.* at 723. Ultimately, the court found the alleged victim's statement to her mother was indeed a false allegation that "was central to Millam's defense." *Id.* at 722-24.

The court explained that in "a case in which the evidence against the defendant is not overwhelming, such evidence is imperative to an effective defense." *Id.* at 723. The court noted the facts of the case demonstrated a classic "he said, she said" situation, since the State's case "was based almost exclusively on [the victim's] testimony," no physical evidence of sexual abuse was presented, and there were no witnesses to the abuse, making the victim's credibility "pivotal to the State's case. Any evidence undermining that credibility could only work in Millam's favor, particularly evidence that [the victim] had made, and later recanted, similar claims of sexual abuse." *Id.* at 722-23. Moreover, the court found that "[e]vidence of [the victim's] prior false claims of sexual abuse could have greatly impugned her credibility, thus lending credence to Millam's contention that he did not sexually abuse her." *Id.* at 723.

Like in *Millam*, the State's case against Hartman was based almost exclusively upon V.V.'s testimony. Consequently, *if* Hartman shows V.V. actually made a prior false sexual allegation, that false claim would be essential to his defense, making the evidence relevant and more probative than prejudicial.[2] *See id.* However, we agree with the State that Hartman did not meet that threshold showing here.

Hartman declares that L.F.'s statement to the investigating officer confirms V.V. made a prior allegation of sexual abuse and that the allegation was false. However, L.F.'s interview with the officer is not that precise. Rather, L.F. only

---

[2] We also note that the statement would not be hearsay, as it was not offered for the truth of the matter asserted—that V.V. was sexually abused by her father. *See* Iowa R. Evid. 5.801(c) (defining hearsay as a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted). Rather, the false statement is a direct attack on V.V.'s credibility.

stated V.V. had "said things about her real dad . . . that he's touched her and stuff like that before." When asked what "touched" meant, L.F. told the officer he was not sure, "[s]he just said that he's touched her" and "she didn't think it was appropriate." While it could be inferred that V.V., if she made this statement to L.F., was talking about sexual abuse, V.V. denies that she made the statement. Though a close call, we do not believe L.F.'s claim that V.V. made such a statement is more likely true than V.V.'s claim that she did not make the statement, particularly in light of the vague description given by L.F. and his own admission he did not know what V.V. meant. *See, e.g.*, *Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 772 N.W.2d 758, 761 (Iowa 2009) ("A preponderance of the evidence is the evidence that is more convincing than opposing evidence or more likely true than not true. It is evidence superior in weight, influence, or force.").

Here, Hartman was able to challenge V.V.'s credibility based upon her past instances of untruthfulness through numerous witnesses at trial, but none of those witnesses testified V.V. had ever made this type of claim before. Moreover, V.V.'s mother testified she did not know the truth; unlike the victim's mother in *Millam*, V.V.'s mother did not testify she believed V.V. was lying, though she found some inconsistencies in V.V.'s statements to her about the rape. Additionally, the investigating officer testified he believed V.V. was consistent in her allegations against Hartman. Given that V.V. denied making the statement to L.F., L.F.'s testimony of the "statement" was too vague to show V.V. had made a sexual allegation against another, there was no other evidence that V.V. had ever made such a claim before, V.V. was consistent in her description

of the rape, and Hartman was able to attack V.V.'s credibility, we do not find the district court abused its discretion in not permitting L.F. to testify about V.V.'s alleged statement.

### B. Ineffective Assistance of Counsel.

Finally, Hartman argues his trial counsel was ineffective for failing to request a limiting instruction directing the jury that it could not consider V.V.'s testimony that Hartman had committed other sexual acts against her as evidence Hartman committed the charged crime. We review ineffective-assistance-of-counsel claims de novo. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). To succeed on such a claim, Hartman must prove both that (1) his counsel failed to perform an essential duty, and (2) he suffered prejudice as a result of his counsel's failure. *See id.*

We generally preserve such claims for postconviction-relief proceedings where a proper record can be developed. *State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). "That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). "[A]t a postconviction relief hearing, trial counsel will have an opportunity to explain [his or] her conduct and performance." *State v. Blair*, 798 N.W.2d 322, 329 (Iowa Ct. App. 2011). "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Bentley*, 757 N.W.2d 257, 264 (Iowa 2008). Consequently, we will only address claims of ineffective assistance of counsel on direct appeal when the record is sufficient to decide the issue. *State v. Ross*, 845 N.W.2d 692, 697 (Iowa 2014).

When evidence is admissible for one purpose, but not for another, the district court shall, upon request, restrict the evidence to its proper scope and give a limiting instruction. *See* Iowa R. Evid. 5.105. However, counsel may also have had strategic concerns for not requesting the limiting instruction. *See State v. Reyes*, 744 N.W.2d 95, 104 (Iowa 2008). Here, the record is inadequate to make such a determination. We therefore preserve this claim for possible postconviction-relief proceedings.

### IV. Conclusion.

For the foregoing reasons, we affirm Hartman's conviction for assault with intent to commit sexual abuse, and we preserve his ineffective-assistance-of-counsel claim for possible postconviction-relief proceedings.

**AFFIRMED.**