# IN THE SUPREME COURT OF IOWA

No. 92 / 04-1949

Filed October 6, 2006

**STATE OF IOWA,**

Appellee,

vs.

**MICHAEL JOHN ALBERTS,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, L. Vern Robinson, Judge.

Convicted sex abuser seeks further review of court of appeals decision affirming his conviction. **DECISION OF COURT OF APPEALS PARTIALLY VACATED; CASE REMANDED.**

Paul D. Miller of Miller Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, J. Patrick White, County Attorney, and Victoria Cole, Assistant County Attorney, for appellee.

**STREIT, Justice.**

Is skinny-dipping a form of sexual behavior? Michael John Alberts allegedly sexually assaulted R.M., his nephew's twenty-two-year-old girlfriend. Alberts was convicted of third-degree sexual abuse following a jury trial in Johnson County, Iowa. On appeal, Alberts alleged the prosecutor engaged in prosecutorial misconduct and complained numerous errors were made by the district court. Because we find the district court erred by failing to determine whether R.M. made a prior false allegation of sexual misconduct relating to a skinny-dipping incident, we reverse the district court judgment on this error and remand for further proceedings.

## I. Facts and Prior Proceedings

On the night of October 19, 2003, R.M. attended a bachelorette party at a Cedar Rapids bar named Borrowed Bucks. Alberts was also at the bar, and the two struck up a conversation. Alberts and R.M. knew each other through R.M.'s boyfriend, Jesse Goeller. Alberts is Jesse's forty-two-year-old uncle. R.M. attended a half dozen or so family gatherings with Jesse where Alberts was present.

Additionally, a few weeks prior to the bachelorette party, Jesse, R.M., and a friend of R.M. ran into Alberts at Borrowed Bucks. There, the four of them danced as a group and at times Alberts and R.M. danced together in a provocative manner. When the bar closed, R.M. and Jesse sat with Alberts in the cab of Alberts' semi-truck. R.M.'s friend waited in the car. R.M. and Alberts smoked marijuana. Before leaving, R.M. unhooked her bra under her shirt and hung it on Alberts' rearview mirror. R.M. left the cab and Jesse followed a couple minutes later after Alberts handed Jesse R.M.'s bra.

During the bachelorette party, R.M. drank several beers and a shot of tequila. At closing time, R.M. went with Alberts to his family's lake house instead of remaining with the bachelorette group. When they arrived at the lake house, R.M. ate some food, headed for the bathroom, and vomited. She then told Alberts she felt "like crap" and needed to "sleep this off." Alberts followed R.M. into one of the bedrooms and sat next to her on the bed. With Alberts still in the room, R.M. took off her skirt and climbed into bed.

Sometime later, R.M. woke to find Alberts sucking her breasts. According to R.M., she did not respond to his actions. Alberts then performed oral sex on her and had intercourse with her. R.M. claims she pretended to be asleep during the entire episode. Alberts thereafter left to sleep in another bedroom.

The next morning, Alberts drove R.M. to her home. R.M. showered as soon as she got there. Jesse, the boyfriend, who had been visiting friends in Ames, returned home early in the afternoon. After speaking with R.M. about the previous night's events, Jesse took R.M. to the hospital.

At the hospital, R.M. told the nurse she needed to report a rape. A sexual assault examination ensued. The nurse found semen inside her vagina, but did not observe any evidence of trauma or injury. Police officers spoke with R.M. at the hospital and told her she had the option to press charges, which she did three days later.

Before trial, the district court granted the State's motion in limine which prevented Alberts from presenting testimony about R.M.'s sexual history or a recent skinny-dipping episode with another man.

At trial, Alberts testified R.M. consented to the sexual encounter by kissing him and moving her hips during intercourse. His attorney

argued R.M. only claimed it was non-consensual because she did not want to lose her relationship with Jesse. This argument was unsuccessful, and the jury convicted Alberts of third-degree sexual abuse.

Alberts argued a voluminous number of issues on appeal. He argued: (1) the district court erred by ruling that R.M.'s mental health records were not relevant or discoverable; (2) the district court improperly excluded expert testimony regarding the possible effect of R.M.'s mental health on her credibility; (3) the district court erred by excluding certain evidence regarding R.M.'s alleged prior false claim of sexual assault and flirtatious nature when drinking; (4) his trial counsel was ineffective when he did not attempt to introduce evidence of R.M.'s infidelity and promiscuity as impeachment evidence; (5) his trial counsel erred by failing to object to R.M.'s testimony that she feared for her life during the sexual assault; (6) his trial counsel failed to object to three instances of questioning by the prosecution and comments made during closing arguments which involved possible *Graves* violations; (7) his trial counsel failed to object to alleged prosecutorial misconduct; and (8) the district court erred in overruling the motion for new trial based on alleged misconduct by the prosecutor during direct examination of R.M.

The court of appeals addressed all issues and affirmed the decision of the district court. We granted further review.

## II. Merits

## A. False-Claim Exception to the Rape-Shield Law

Because Alberts had elicited statements from witnesses during depositions regarding R.M's flirtatious nature, her past sexual comments, and prior allegation of being trapped by a man during a skinny-dipping incident, the State filed a motion in limine asking the

court to determine whether such evidence was admissible. The State contended such testimony was either inadmissible under the Iowa rape-shield law or irrelevant to the case at hand.

In the unreported pretrial hearing, the State pointed to several incidents involving R.M. it considered inadmissible and irrelevant. One specific instance was a Fourth of July party where Jesse's brother Josh discovered R.M. skinny-dipping with Chris Slach. In his deposition, Josh described how he saw R.M. with her arms around Slach in the Cedar River.[1] Josh said he "busted them" because R.M. was supposed to be dating his brother. According to Josh, R.M. came out of the water crying. She told Josh "[t]hank God you saw me. I didn't know what to do out there. . . . I couldn't get away from him. I didn't know what to do." R.M. later explained that nothing sexual had happened between the two. Slach was also prepared to testify it was R.M.'s idea to go skinny-dipping and there was no sexual contact between the two.

During argument on the motion in limine, Alberts contended this evidence was relevant because R.M.'s statement to Josh immediately after the skinny-dipping incident was similar to her response about her sexual encounter with Alberts. He claimed this evidence was important to his case because it supported his theory that R.M. accused men of improper sexual conduct in order to shift blame away from her supposed infidelity. He also claimed this incident was particularly relevant because it reflected on the credibility of the only other witness to the alleged rape—R.M.

---

[1]There is some debate on whether R.M. was wearing any clothing while skinny-dipping. Josh said R.M. "might" have been wearing her bra and underwear, while the male skinny-dipper stated in his deposition "I was completely naked, and I believe [R.M.] was too."

Alberts argued the rape-shield law was not applicable to this situation because there was no sexual contact and therefore no "past sexual behavior." Alternatively, he argued that if this was sexual activity or sexual behavior, then it was admissible under the false-claim exception to the rape-shield law.

The district court sustained most of the State's motion in limine and specifically excluded any evidence pertaining to the skinny-dipping incident. The court also excluded any testimony which described R.M.'s character as flirtatious or promiscuous. However, the court allowed the jury to hear evidence that R.M. had engaged in "dirty dancing" with Alberts a few weeks before the alleged sexual abuse, smoked marijuana with him in the cab of his semi-truck, and removed her bra and hung it on his rear-view mirror.

### 1. Preservation of Error

The State does not contend Alberts failed to preserve this matter for our review. In its appellate brief, the State conceded the error was preserved "by motions and an offer of proof." However, because the issue was only addressed during the motion in limine, we find it proper to analyze whether it was properly preserved for our review.

The general rule regarding the preservation of alleged errors in rulings on motions *in limine* was stated in *State v. Tangie*, 616 N.W.2d 564, 568-69 (Iowa 2000):

> Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial. However, "where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation, the decision on the motion has the effect of a ruling."

(Citations omitted.)

The key to our analysis is to determine what the trial court ruling purported to do. *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). "A ruling only granting or denying protection from prejudicial references to challenged evidence cannot preserve the inadmissibility issue for appellate review." *Id.* However, "if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial." *Id.*

Before we analyze whether the court's ruling resolved the matter in such a way that it was beyond question that the challenged evidence would not be admitted during trial, we must consider the context of the court's ruling. The State filed a motion in limine asking for "a hearing outside the presence of the jury, accompanied by an offer of proof . . . to determine whether such testimony would be admissible." Alberts filed a response to the State's motion in limine. His response contained offers of proof in the form of deposition testimony from R.M., Chris Slach (the male skinny-dipper), Josh Goeller, and other witnesses related to other items in the motion. Alberts also filed three separate briefs outlining the law surrounding the admissibility of such evidence.

The district court conducted a hearing on the admissibility of such evidence. Although the hearing was unreported, we can glean from the court's oral ruling that both parties had a full opportunity to argue the merits of their respective positions. After this hearing, the court made an oral ruling on the motion. The district court sustained the State's motion in limine to keep the defense from presenting evidence on the skinny-dipping incident. In so ruling, the district court judge stated:

> I'm not going to permit testimony or evidence concerning
> [R.M.'s] mental health or past sexual comments or activities,

with the exception of [the event where she danced with Alberts a few weeks prior to the alleged sexual assault].

After the district court sustained the State's motion, the court made the following additional comments regarding its ruling:

> if R.M. gets into her virtue, if that's the right term - - I'm referring now to the potential testimony that she had never cheated on her boyfriend - - that could open the door to some of these other matters that have been raised.

When asked whether testimony that R.M. told Alberts she would never "cheat" on Jesse would open the door to this excluded evidence, the court stated "Not necessarily. I can't tell you right now. It depends on the context that comes in."

Even though the district court stated the evidence may become admissible if R.M. opened the door to her virtue, this does not change the fact that the court's ruling was controlling so long as this door was not opened. The State specifically asked for a ruling on the admissibility of such evidence, and the plain language of the court's ruling——"I'm not going to permit testimony or evidence concerning [R.M.'s] mental health or past sexual comments or activities"—rings of a final ruling. Although the district court did not specifically state the evidence was "inadmissible," the State specifically asked that the court determine its admissibility and the court did so. In addition, both parties treated the court's ruling on the motion as a final decision.

We find the district court did rule on the admissibility of the testimony regarding the skinny-dipping incident. *See O'Connell,* 275 N.W.2d at 202 ("[I]f the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial."). The ruling was definitive and Alberts was not further required to object at trial. *See Tangie,* 616

N.W.2d at 569 (when court rules on admissibility of evidence in a motion in limine, objection need not be renewed at trial); *State v. Mark,* 286 N.W.2d 396, 410 (Iowa 1979) (same); *O'Connell,* 275 N.W.2d at 202 (same). Therefore, Alberts preserved error on this issue.

## 2. Abuse of Discretion

Alberts claimed the district court erred when it ruled he could not present evidence about the skinny-dipping incident or question R.M. about the incident during cross-examination.

We review trial court rulings on admissibility of evidence under rule 5.412 in criminal prosecutions for abuse of discretion. *State v. Mitchell,* 568 N.W.2d 493, 497 (Iowa 1997). Reversal is warranted only upon showing the "court exercise[d] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

The trial court did not elaborate on why it sustained the State's motion in limine. Therefore, we analyze whether the court abused its discretion in excluding the evidence under the reasons proffered by the State—the evidence was protected "past sexual behavior" of the complaining witness or, in the alternative, the evidence was irrelevant and prejudicial.

### a. Rape-Shield Law

Rule 5.412 prohibits introduction of reputation or opinion evidence of a complainant's "past sexual behavior" and substantially limits admissibility of evidence of specific instances of a complainant's past sexual behavior. Rule 5.412(*d*) defines "past sexual behavior" as "sexual behavior other than the sexual behavior with respect to which sexual abuse is alleged." We recently clarified this definition:

> "past sexual behavior" means a volitional or non-volitional physical act that the victim has performed for the purpose of

the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person.

*State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004) (quoting *State v. Wright*, 776 P.2d 1294, 1297-98 (Or. Ct. App. 1989)).

In his brief to the district court, Alberts argued the skinny-dipping incident was not "past sexual behavior" and "not a claim of prior sexual activity because no actual sexual contact occurred." In support of this argument, Alberts offered the deposition testimony of both skinny-dippers.

When questioned at her deposition about the incident, R.M. denied any sexual activity occurred:

> We were skinny dipping in the river together, and he got close to me and asked me if he could kiss me, and I said, "No, I have a boyfriend."

Slach corroborated R.M.'s testimony that she declined his request for a kiss. Both parties expressly denied any sexual activity occurred. Nonetheless, based on all of the circumstances, we find the incident to be past sexual behavior.

At the outset, we concede the difficulty in determining what sexual behavior is for purposes of our rape-shield law. In *State v. Zaehringer*, 280 N.W.2d 416 (Iowa 1979), we were asked to determine the applicability of the rape-shield law as it then existed to nude posing. There, we stated:

> We are unable to conclude that posing nude is per se, sexual conduct which the legislature intended to exclude. . . . [P]osing nude does not in and of itself infer or connote sexual activity or conduct. Absent a showing or implication of sexual activity of some sort accompanying the posing, § 782.4 does not come into play. While there may be those to whom nude posing is sexually suggestive, to find nude

posing to be "sexual conduct" within the meaning of § 782.4 would be to place a strained and unreasonable construction on that statute.

*Zaehringer*, 280 N.W.2d at 420. Just like nudity alone is not sexual, skinny-dipping in and of itself is not sexual behavior. But in this case, the skinny-dipping incident should be deemed sexual behavior based on the circumstances described. Slach testified he was at a Fourth of July party drawing a beer from the keg when R.M. approached him and asked him if he would like to go swimming. It was approximately midnight and the two of them had never previously spoken. At his deposition, Slach said:

> I didn't see any reason to decline her. I wasn't seeing anybody at the time, and I just assumed from the way that she come up to me that she was somewhat interested, and it didn't appear to be at the time that she was attached to anybody either.

According to Slach, R.M. took her clothes off first and encouraged him to do the same. He recalls both of them being completely naked. While they were in the river, R.M. put her arms around Slach's shoulders, which prompted him to ask for permission to kiss her. Slach stated "it kind of seemed to me like she was coming on to me." After R.M. declined the kiss, the two of them continued to have their arms around each other for another five minutes until Josh interrupted them, causing them to get out of the water.

Based on these facts, the skinny-dipping was likely a precursor to sexual activity. This is evidenced by Slach asking for a kiss. To say it was not sexual behavior would be to say a circumstance where the complaining witness was thwarted in her attempt to meet someone for an amorous rendezvous was not sexual behavior. Such a result would be contrary to the purpose of the rape-shield law, which is to protect the

victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters. *Mitchell*, 568 N.W.2d at 497. Thus, this particular episode of skinny-dipping is covered by the rape-shield law unless R.M. made a related false allegation of sexual misconduct.[2]

In *Baker*, we held prior false claims of sexual activity do not fall within the coverage of our rape-shield law. *Baker*, 679 N.W.2d at 10 ("Because a false allegation of sexual activity is not sexual behavior, such statements fall outside both the letter and the spirit of the rape-shield law."). There, we assumed the claim was false and consequently found it unnecessary to address the procedures and standards to be applied in making that threshold determination. *Id.* at 9 n.1. That issue is now before us.

In keeping with the policy behind our rape-shield law, it is imperative that a claim of sexual conduct (or misconduct) by the complaining witness be shown to be false before it is admissible at trial. Allowing the jury to make the initial determination of the truth or falsity of the alleged statement "would contradict the purpose of rape-shield laws—which is to prohibit a jury from considering evidence about an alleged victim's sexual conduct, unless a judge first determines that such evidence is manifestly necessary to achieve a fair trial." *State v. Quinn*, 490 S.E.2d 34, 40 (W. Va. 1997). Thus, we hold a criminal defendant wishing to admit such evidence must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a

_____

[2]If we found this incident was not "sexual behavior" then, assuming relevance, it would be admissible irrespective of the falsity of R.M.'s alleged statements to Josh. R.M.'s supposed statements make the incident sexual if it was not already.

preponderance of the evidence.[3] We agree with the Supreme Court of New Jersey that this "standard strikes the right balance, placing an initial burden on the defendant to justify the use of such evidence while not setting an exceedingly high threshold for its admission." *State v. Guenther*, 854 A.2d 308, 324 (N.J. 2004); *see also State v. West*, 24 P.3d 648, 656 (Haw. 2001) (adopting preponderance of the evidence as the standard of proof a defendant must meet when seeking to prove the complaining witness made a prior false accusation of sexual assault); *Miller v. State*, 779 P.2d 87, 90 (Nev. 1989) (same); *Morgan v. State*, 54 P.3d 332, 339 (Alaska Ct. App. 2002) (same).

As we said in *Baker*, a falsity determination simply means the statements are not "past sexual behavior" within the meaning of our rape-shield law. *Baker*, 679 N.W.2d at 10. We note "[t]he evidence remains subject to all other applicable evidentiary requirements and considerations."[4] *Quinn*, 490 S.E.2d at 40. If the trial judge ultimately

---

[3]Under our rape-shield law, a defendant intending to offer evidence of specific instances of the complaining witness's past sexual behavior must first make a written motion to offer such evidence not later than 15 days before the trial date. Iowa R. Evid. 5.412(*c*)(1). This procedural requirement would also apply to allegedly false claims of sexual conduct because they are covered by the rape-shield law unless proven to be false. The motion must be accompanied by a written offer of proof and the trial court must order a hearing in chambers to determine the admissibility of such evidence. *Id.* 5.412(*c*)(2).

[4]Notwithstanding rules similar to our rule 5.608, some jurisdictions carve out a special exception and allow the use of extrinsic evidence to contradict the complaining witness's answer with respect to a prior false accusation. *Compare State v. Long*, 140 S.W.3d 27, 31 (Mo. 2004) (allowing a criminal defendant to introduce extrinsic evidence of prior false allegations "in some cases") and *Morgan v. State*, 54 P.3d 332, 336 (Alaska Ct. App. 2002) (allowing a criminal defendant to both cross-examine the complaining witness and present extrinsic evidence regarding a prior false accusation of sexual assault), *with State v. Almurshidy*, 732 A.2d 280, 287 n.4 (Me. 1999) (noting extrinsic evidence to prove the falsity of the accusation is not admissible). *See also* Denise R. Johnson, *Prior False Allegations of Rape: Falsus in Uno, Falsus in Ominibus*, 7 Yale J.L. & Feminism 243, 250 (1995) (making a distinction between a false allegation that demonstrates a "motive to fabricate" with a false allegation that merely shows the witness's "character for untruthfulness," and challenging the rationale behind allowing extrinsic evidence to prove the latter).

determines such evidence is admissible, the State may nevertheless rebut or impeach such evidence before the ultimate trier of fact. *Id.*

In the present case, the trial court sustained the State's motion in limine without explanation. Presumably, the court found the skinny-dipping incident to be "past sexual behavior." However, the court failed to take the additional step of determining whether R.M. made a false claim of sexual misconduct relating to the incident, which would make the rape-shield law not applicable.

**b. Relevancy**

In its appellate brief, the State concedes that "[w]hile the skinny-dipping incident may not be covered under Iowa Rule of Evidence 5.412, it was properly excluded under general considerations of relevancy."

Evidence is properly excluded from trial if it is not relevant to the trial. Iowa R. Evid. 5.402. Relevant evidence is "evidence having any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401.

The test to determine if evidence is relevant is "'whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [such person] knew of the proffered evidence.'" *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988) (citation omitted) (first alteration in original); *accord State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). The State contends the skinny-dipping incident was irrelevant because it has nothing to do with whether R.M. consented to the sexual encounter with Alberts.

We disagree. In her deposition, R.M. stated Slach never "forced himself" on her while they were skinny-dipping. However, at the time of the incident, R.M. allegedly came out of the water crying. According to

Josh, the person who discovered R.M. and Slach skinny-dipping, R.M. said: "Thank God you saw me. I didn't know what to do out there. . . . I couldn't get away from him. I didn't know what to do." R.M.'s statements to Josh, if she did say them, are relevant for two reasons. First, they reflect on her credibility as a witness. Second, the alleged statements may reveal a motive to lie. If a fact finder were to conclude she made untruthful statements to preserve her boyfriend's perception of her virtue when she was discovered skinny-dipping with another man, the fact finder might reasonably conclude she's also untruthful with respect to her allegations that Alberts raped her for the same reason.

### c. Rule 5.403 Balancing

Even if the evidence was relevant, it may still "be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403.

In *Baker*, after we concluded the false claim of past sexual behavior was not excludable under rule 5.412 because the false claim was not in fact "sexual behavior," we analyzed whether the district court abused its discretion in concluding the unfair prejudice inherent in the evidence of the prior false claim outweighed its probative value. *Baker*, 679 N.W.2d at 10-11. We noted rule 5.412 suggests the complaining witness's reputation and privacy are the primary interests in the balancing process. *Id.* at 11. However, when the conduct is not covered by the rape-shield law, it is instead evaluated under the traditional rule 5.403 prejudice analysis. *Id.* at 11-12. Under rule 5.403, the primary

focus is not upon the witness, but   the interests of the defendant and the right of the defendant to present a defense.  *Id.* at 12.

Based on the record before us, we do not find any of the aforementioned dangers potentially outweighed the probative value of this evidence.  This evidence would not have been confusing to the jury, nor would it have been cumulative or a waste of time.  Moreover, the evidence would not have been misleading to the jury because R.M. would have had ample opportunity to deny or explain her allegedly untruthful statements.  Finally, while it may have been embarrassing for R.M. to testify about going skinny-dipping, this is not the kind of unfair prejudice that will outweigh the probative value of clearly relevant evidence.  This is especially true when the countervailing right of a defendant to present a defense to a criminal charge is at stake.  *Id.*

Therefore, if on remand R.M.'s alleged statements to Josh satisfy the threshold showing of falsity we adopt today, we see no reason to exclude the evidence as irrelevant or unfairly prejudicial.

### 3.  Resulting Prejudice

The facts of this case indicate Alberts was entitled to a hearing in order to prove R.M. made a prior false claim of sexual misconduct relating to a skinny-dipping incident with another man.[5]  As we have already said, a showing of falsity merely makes the rape-shield law inapplicable with respect to the false claim.  We must now decide whether the trial court's failure to conduct such a hearing requires us to reverse and remand for a new trial.  *State v. Henderson*, 696 N.W.2d 5, 12 (Iowa 2005).

---

[5]At her deposition, R.M. stated Slach never "forced himself" on her while they were skinny-dipping.  However, she was never given the opportunity to admit or deny making statements to that effect to Josh as she came out of the water.

The verdict was primarily ground on the conflicting testimony of R.M. and Alberts  R.M. testified Alberts sexually assaulted her.  Alberts admits having sex with her, but claims the sex was consensual.  There was no physical evidence of an assault.  No other witnesses testified Alberts sexually assaulted the victim.  The jury's assessment of the relative credibility of R.M. and Alberts was the key to the conviction, thereby enhancing the relevance of the allegedly false prior allegation.  By denying Alberts the opportunity to prove to the court R.M. made a prior false claim of sexual misconduct, the court hampered Alberts' ability to argue R.M. accused another man of improper conduct to disguise her own questionable behavior.  This error may have unduly prejudiced Alberts' defense and therefore requires us to remand the case so the trial court may determine whether R.M. made false statements to Josh.

**B.  Other Matters Raised on Appeal**

With respect to the remaining issues raised by Alberts, we agree with the court of appeals they have no merit and affirm.

**III.  Conclusion**

We find the trial court abused its discretion by excluding evidence of the skinny-dipping incident without first giving Alberts the opportunity to prove at a 5.412(*c*) hearing that R.M. made a prior false claim of sexual misconduct involving the man with whom she went skinny-dipping.  For the sake of judicial economy, we remand for a hearing to determine whether R.M. made these statements and if so, whether they are false.  If the trial court finds Alberts meets the threshold showing set forth in this opinion, then a new trial shall be granted.  If Alberts fails to make such a

showing, then his conviction stands. This matter is remanded to the trial court for proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS PARTIALLY VACATED; CASE REMANDED.**