# IN THE COURT OF APPEALS OF IOWA

No. 18-0588
Filed May 15, 2019

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**EDDIE DELONG,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cherokee County, Nancy L. Whittenburg, Judge.

Eddie DeLong appeals the judgment and sentence entered upon his convictions for third-degree sexual abuse and providing alcohol to a minor. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

After hearing evidence Eddie DeLong plied fourteen-year-old M.G. with alcohol and committed a sex act against her, a Cherokee County jury found him guilty of sexual abuse in the third degree and supplying alcohol to a minor. The district court sentenced him as a habitual offender. On appeal, DeLong argues the district court abused its discretion in denying his motion to present testimony about M.G.'s sex life under the source-of-injury exception in Iowa's rape-shield law. *See* Iowa R. Evid. 5.412. He also challenges the habitual-offender colloquy and the fine imposed under Iowa Code sections 902.8 and 902.9(1)(c) (2016).

Because the district court reasonably viewed as speculative the proposed testimony suggesting an alternative explanation for M.G.'s pain the morning after her encounter with DeLong, we find no abuse of discretion in the court's rape-shield ruling. Accordingly, we affirm DeLong's convictions. But we reverse the habitual-offender judgment and remand for further proceedings because DeLong's stipulation of prior offenses fell short of the requirements in *State v. Harrington*, 893 N.W.2d 36, 45–46 (Iowa 2017). We need not reach the issue concerning the concededly erroneous fine as resentencing will be required.

## I.    Facts and Prior Proceedings

A reasonable jury could have found the following facts. M.G. was fourteen years old in the summer of 2016 when she met DeLong's twelve-year-old daughter at a local swimming pool. M.G. and DeLong's daughter eventually made plans for a sleepover at DeLong's house on the night of June 30.

At the house, DeLong took a bottle of wine out of the refrigerator and asked the girls if they wanted a drink. M.G. said yes and took a sip out of the bottle.

DeLong told M.G. not to tell anyone about the drinking or he would get in trouble. Later that night, DeLong's daughter took a shower, and M.G. changed into pajamas. While M.G. was alone in the bedroom, DeLong came in and said "he wanted [her] to feel comfortable and at home in his house and [that] he wouldn't judge [her] for anything [she] did or said." As he said this, DeLong was "moving closer" to M.G., which made her "uncomfortable."

About five minutes later, DeLong offered M.G. a can of "Straw-Ber-Rita," an alcoholic beverage described as a strawberry-flavored margarita. At DeLong's prompting, M.G. took a sip. When M.G. said she liked it, DeLong left the room for a few minutes and returned with "the drink in a tall blue glass." DeLong warned M.G. not to tell his daughter that M.G. was drinking alcohol. M.G. drank the whole glass and thought it tasted "[s]lightly different" than her first sip. The drink made M.G. feel "fuzzy" and "weak." It also made her head and stomach hurt.

M.G.'s mother called her as many as twenty times that night and—uncharacteristically—M.G. did not answer. When M.G. eventually answered around 1:00 a.m., she "did not sound like herself." According to her mother, M.G. "sounded very lethargic," "[h]er words were very drawn out," and it was "like she wasn't almost even coherent of even acknowledging that she was on the phone with [her mother]." After a short pause, DeLong's daughter (who "sounded very awake, very peppy") took the phone and told M.G.'s mother "[e]verything was fine." Later, the girls watched a movie in the living room, but M.G. remembered feeling so tired it was like she "couldn't move." DeLong's daughter went to bed, leaving M.G. alone.

At some point in the night, DeLong joined M.G. on the couch and started "rubbing and squeezing [her] chest" with his hands. DeLong rubbed M.G.'s vagina with his hands over her pajamas. She recalled he was breathing "heavy." DeLong then pulled M.G.'s pants down to her knees. M.G. remembered being too scared to say anything. M.G. fell asleep and did not wake up until noon. When she awoke, she found vomit on her shirt. She went to the bathroom and noticed her pants were on backwards and her underwear was spotted with blood. She knew she had put her pants on facing the right way when she changed the night before. Her vaginal area hurt when she wiped after using the bathroom. M.G. testified her genitals were not sore before she went to bed.

M.G.'s mother and father noticed a change in their daughter's behavior after the sleepover. M.G. was "just sad, very sad, very distant, wouldn't talk, wouldn't eat. She wasn't going out, hanging with her friends. She was no longer going to the pool. She just wanted to stay home and just be left alone." M.G. also had trouble sleeping and would even curl up on the floor near her parents' bedroom rather than sleep alone. When asked what was wrong, M.G. "wouldn't really give a straight answer."

Around July 10, DeLong texted M.G.'s mother, asking permission to take M.G. with his daughter to the Mall of America for the weekend. M.G.'s mother asked M.G. about the invitation and "before [she] could finish what [she] was asking," M.G. responded, "No, I'm not going." About one week later, M.G. left a note on the counter for her parents:

> I'm sorry you had to find out this way, but two weeks ago, on a Thursday night, I spent the night at [DeLong's daughter's house]. We got back from the movie and her dad offered me a drink. I very

stupidly accepted. I had gotten drunk and passed out on the couch. I remember her dad lay next to me and touch[ed] me. I woke up with my pants on backwards. Until now, with the help of my friends, I was too scared to tell you. I did it this way so you can have time to process. I'm so sorry I told you this way. I will be home at noon to talk about this. Until then I will be at a friend's house. I am safe.
    I love you,
    [Signed, M.G.]

When discussing the letter with his daughter, M.G.'s father stressed the importance of being honest, and she "cried hysterically and told [him] that she was telling the truth." M.G.'s parents contacted law enforcement.

Special Agent Trevor Modlin of the Iowa Division of Criminal Investigation (DCI) and other officers executed a search warrant on DeLong's residence. They found Straw-Ber-Ritas in the refrigerator. And they found DeLong's sperm on the couch cushion, where M.G. said she was sexually assaulted. DeLong denied abusing M.G. But he also told the DCI he did not know of any reason why M.G. would falsely accuse him. DeLong offered to make his daughter available for an interview but did not do so. He also avoided calls from the DCI agents.

The State charged DeLong with third-degree sexual abuse as a habitual offender and supplying alcohol to a minor. *See* Iowa Code §§ 123.47(1), 123.47(5), 709.1(1), 709.4(1)(a), 709.4(1)(b)(1), 709.4(d), and 903B.1. As the prosecution progressed, the defense filed a motion seeking to offer evidence that someone other than DeLong was the source of injury to M.G.'s genitals. *See* Iowa R. Evid. 5.412(b)(1)(A). The defense presented an offer of proof including summaries of interviews with M.G.; her fifteen-year-old boyfriend, B.C.; and

thirteen-year-old K.A., a friend of both M.G. and DeLong's daughter.[1] At a hearing on the motion, defense counsel sought to offer evidence that M.G. "had sexual intercourse with her boyfriend the night before the alleged incident with DeLong." Following the hearing, the court entered a written ruling rejecting the evidence as speculative and inadmissible.

At trial, the State offered testimony from M.G., her parents, law enforcement, and a forensic interviewer with the Child Advocacy Center (CAC). DeLong and his daughter testified for the defense. DeLong denied sexually abusing M.G. He said his sperm may have gotten on the living room couch from "other incidents" with his girlfriends. On cross examination, he admitted being a convicted felon, including convictions for theft by deception as a habitual offender, felon in possession of a firearm, and third-degree theft. DeLong's daughter denied taking a shower and leaving M.G. alone in her bedroom. She also denied M.G. slept on the couch, insisting they both slept in her bed. The jury found DeLong guilty as charged, and the court sentenced him as a habitual offender. He now appeals.

## II. Scope and Standards of Review

We review rulings on the admissibility of evidence under rule 5.412 for abuse of discretion. *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006). We review the district court's interpretation of a statute or court rule for the correction of errors at law. *Harrington*, 893 N.W.2d at 41.

---

[1] Rule 5.412(c)(1) states a person seeking to offer evidence of specific instances of an alleged victim's sexual behavior must file a written motion to offer such evidence. The motion must be accompanied by an offer of proof. Iowa R. Evid. 5.412(c)(2). The court may then hold a hearing in chambers to determine if the evidence is admissible. *Id.*

## III. Analysis

**A. Rule 5.412.** DeLong contends the district court abused its discretion in denying his motion to offer evidence of M.G.'s sexual activity, arguing "sexual intercourse within [forty-eight] hours of her report of pain in her genitals . . . goes to what could have been the cause of that pain." He asserts the evidence was probative and crucial to his defense, and was not overly prejudicial to the prosecution.

Rule 5.412—otherwise known as Iowa's rape-shield law—marks an exception to the precept that relevant evidence is admissible. *State v. Clarke*, 343 N.W.2d 158, 160-61 (Iowa 1984). Rule 5.412 generally excludes evidence of an alleged victim's past sexual behavior. The rule aims "to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters." *Alberts*, 722 N.W.2d at 409.

But the rule observes a few exceptions in criminal cases. Iowa R. Evid. 5.412(b). DeLong invokes only the exception for evidence offered to prove someone other than the defendant was the source of injury. *See* Iowa R. Evid. 5.412(b)(1)(A).[2] His offer of proof drew on forensic interviews from M.G.; her boyfriend, B.C.; and their friend, K.A., who described DeLong as "really nice and respectful." Significantly, K.A. asserted she was at B.C.'s house on June 29—the night before M.G. stayed at Delong's house—and overheard "moaning" in the next

---

[2] Rule 5.412(b)(1)(A) provides:
> The court may admit the following evidence in a criminal case:
>> (A) Evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence.

room that she interpreted as B.C. and M.G. having sex. For his part, B.C. recalled having sex with M.G. about four times that summer, the last time in July 2016 after M.G. "told him that she had been raped." For her part, M.G. acknowledged to Agent Modlin that she had not been forthcoming with the CAC interviewer about having sex with B.C. because she did not want her parents to know she was sexually active. In her DCI interview, she recalled having sex with B.C. three times in the summer of 2016.

The district court heard arguments on the pretrial motion and decided not to allow testimony revealing M.G.'s sexual behavior with B.C. The court reasoned:

> In this instance, if credible and reliable evidence established that the alleged victim, M.G., had engaged in sexual intercourse with [B.C.] on June 29, 2016, and, thereafter experienced pain or other injury, then the court might be able to find that its probative value outweighs its prejudicial effect for purposes of showing that the source of M.G's pain was other than [DeLong].

But the district court was not confident in K.A.'s version of events.

> [T]he only evidence made known to the court . . . is that there was no complaining of pain by M.G. in her vaginal area until she woke up on the morning of July 1, 2016, at the home of [DeLong] after having been served an alcoholic beverage by [DeLong] and experiencing fondling by him before she became unconscious the previous night, awoke to find her pants on backwards and blood in her underwear. The only proffered evidence that there may have been sexual intercourse between [B.C.] and M.G. immediately prior to the alleged sexual assault by [DeLong] upon M.G., thereby offering another source of M.G.'s pain, comes from a young girl who was not an eyewitness to any sexual intercourse between M.G. and [B.C.]. At best [K.A.] can only relate hearing a moaning sound on the evening of June 29, 2016, . . . which she has translated into sexual intercourse between M.G. and [B.C.].

The district court noted neither B.C. nor M.G. "identified the evening of June 29, 2016 as a date when they engaged in sexual intercourse." Accordingly, the court found K.A.'s evidence about M.G. having sex the previous night to be

"speculation" and as such, inadmissible. The court found DeLong "failed to make a sufficient showing that the alleged victim's prior sexual activity should be admitted into evidence to prove an alternative explanation for the victim's pain on July 1, 2016."

The court's decision to exclude the evidence of M.G.'s prior sexual activity with her boyfriend was well-reasoned and premised on the uncertain credibility of K.A. as the expected witness. Consequently, we find no abuse of discretion. *See Alberts*, 722 N.W.2d at 407–08 (finding reversal is warranted only if court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable).

Even if we could assign some minimal relevance to K.A.'s speculation that M.G. and B.C. had sexual intercourse on June 29, "[i]t certainly does not constitute evidence whose probative value outweighs the substantial danger of unfair prejudice, confusion of issues, misleading of the jury, and invasion of complainant's privacy which rule 412 and other rape shield laws are designed to prevent." *See Clarke*, 343 N.W.2d at 163. The proffered evidence does not survive the rule's balancing test. *See* Iowa R. Evid. 5.412(c)(2)(C); *see also State v. Mitchell*, 568 N.W.2d 493, 499 (Iowa 1997). DeLong is not entitled to a new trial on his underlying convictions.

**B. Habitual-offender stipulation.** We next turn to DeLong's objection to the habitual-offender enhancement under Iowa Rule of Criminal Procedure 2.19(9). The State agrees the district court failed to substantially

comply with its duty under *Harrington*, 893 N.W.2d at 47.[3]  But the State argues DeLong failed to preserve error on this claim because he did not file a motion in arrest of judgment.  *See id.* at 43.

The State's argument is defeated by the recent case of *State v. Smith*, 924 N.W.2d 846, 851 (Iowa 2019), which held the *Harrington* error-preservation requirement did not apply where the district court failed to inform the defendant of his right to file a motion in arrest of judgment and the consequences of failing to do so.  Here, the court did not ensure DeLong understood the necessity of filing a motion in arrest of judgment to challenge the habitual-offender colloquy or that failure to so file would preclude challenging the proceedings on appeal.  Nor did the court inform DeLong that the "prior felony convictions are only valid if obtained when [DeLong] was represented by counsel or knowingly and voluntarily waived the right to counsel."  *Harrington*, 893 N.W.2d at 45.  The record is silent as to any determination by the court that "a factual basis exists to support the admission to the prior convictions."  *Id.* at 45–46.  The court also failed to convey "the maximum possible punishment of the habitual offender enhancement, including mandatory

---

[3] In *Harrington*, the supreme court held "the [trial] court must engage in [a] colloquy to ensure the [habitual-offender] affirmation is voluntary and intelligent, including an understanding of the rights associated with the trial."  893 N.W.2d 36, 47 (Iowa 2017). The scope of this colloquy is comparable to the colloquy required under Iowa Rule of Criminal Procedure 2.8(2) governing guilty pleas because a "defendant's admission of prior . . . convictions which provide the predicate for sentencing [enhancements] is so closely analogous to a plea of guilty."  *State v. Brady*, 442 N.W.2d 57, 58 (Iowa 1989). Thus, the court must "identify . . . the specific areas that must be a part of a habitual offender colloquy to support an admission."  *Harrington*, 893 N.W.2d at 45.  The court's colloquy for habitual offenders "must also make sure a factual basis exists to support the admission of prior convictions."  *Id.* at 45–46.  In doing so, "[t]he court must inform the offender that these prior felony convictions are only valid if obtained when the offender was represented by counsel or knowingly and voluntarily waived the right to counsel."  *Id.* at 45.

minimum punishment." *Id.* at 46 (citing Iowa R. Crim. P. 2.8(2)(b)). And, the court did not inform DeLong of the applicable trial rights enumerated in rule 2.8(2)(b)(4) and that no trial on the habitual-offender charge would take place if he admitted to the prior convictions. *Id.*; *see also Smith*, 924 N.W.2d at 852–53. Because we cannot be sure DeLong's stipulation to the prior offenses was knowingly and voluntarily entered, we reverse the habitual-offender judgment and remand for further proceedings consistent with *Harrington*. *See* 893 N.W.2d at 48.

In his final issue, DeLong claims the sentencing court erred by imposing a $1000 fine plus surcharge because neither section 902.9(1)(d) nor section 709.4 authorizes a fine. The State concedes a conviction for sexual abuse as a habitual offender does not involve a fine. *See State v. Halterman*, 630 N.W.2d 611, 613 (Iowa Ct. App. 2001). But we need not strike the fine here because resentencing will be required after the habitual-offender colloquy.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**