# IN THE COURT OF APPEALS OF IOWA

No. 24-0434
Filed October 29, 2025

**JUDITH M. WARDLOW and DAVID L. WARDLOW,**
      Plaintiffs-Appellants,

**vs.**

**DAVID L. WANNER and FOOT & ANKLE CLINICS OF SOUTHERN IOWA, P.C.,
d/b/a OTTUMWA FOOT & ANKLE CLINIC, P.C.,**
      Defendants-Appellees.
_____

Appeal from the Iowa District Court for Wapello County, Shawn Showers,

Judge.


A patient appeals the denial of her motion for a new trial after the jury

returned a defense verdict in her medical malpractice lawsuit.  **AFFIRMED.**


John Q. Stoltze (argued), Bruce H. Stoltze Jr., and Jasmina Boever (until

withdrawal) of Stoltze Law Group, PLC, Des Moines, for appellants.

Amanda M. Richards (argued) of Betty, Neuman & McMahon, P.L.C.,

Davenport, for appellees.


Heard at oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**TABOR**, **Chief Judge.**

Judith Wardlow sued Dr. David Wanner and Ottumwa Foot & Ankle Clinic for medical malpractice following podiatric surgery. After the jury returned a verdict for the defendants, Wardlow unsuccessfully moved for a new trial. Her appeal focuses on what she perceives as the district court's unfair treatment of her expert witnesses. Because no error alleged by Wardlow requires a new trial, we affirm.

## I.      Facts and Prior Proceedings

In 2016, Wardlow went to Dr. Wanner, a licensed podiatrist, for an ingrown toenail and a left bunion deformity. Before this visit, she had been receiving cortisone shots from her family physician, Dr. Donal Hill. Dr. Wanner performed surgery in early December 2016.[1] During her recovery, Wardlow struggled through several setbacks, including fractures, subsequent surgeries, and wound care issues. At her second follow up, her incision began to reopen. Dr. Wanner performed repair surgery to clean the skin edges and re-suture the wound. In late January 2017, a swab of Wardlow's foot tested positive for methicillin-resistant staphylococcus aureus (MRSA) infection. She was also diagnosed with cellulitis of the left foot. Wardlow went to Dr. Hill for a second opinion, and Dr. Hill increased her antibiotic. In March, Dr. Wanner reopened her wound and inserted a plate and screen. By April, her foot still had not fully healed. In June, Dr. Wanner performed Wardlow's fifth surgery and removed the metal hardware from her foot.

---

[1] He performed a bunionectomy with an osteotomy and screw fixation, left, and a tailor's bunionectomy with an osteotomy and screw fixation.

Wardlow last visited Dr. Wanner in September 2017, during which he recommended physical therapy for gait training. In July 2018, Dr. Bradley Bussewitz performed a partial metatarsal amputation.

Believing she received negligent treatment, Wardlow sued Dr. Wanner for medical malpractice.[2] At trial, each side had three expert witnesses. Wardlow offered opinions from: (1) Dr. Brant McCartan, a podiatrist retained to testify about the standard of care and causation; (2) Dr. Robin L. Sassman, a medical doctor and occupational specialist retained to testify about damages; and (3) Dr. Ravi Durvasula, a doctor of internal medicine and infectious diseases. The defense experts were: (1) Dr. Troy J. Boffeli, a doctor of podiatric medicine retained to testify regarding standard of care, causation, and damages; (2) Dr. Richard A. Miller, an orthopedic surgeon retained to testify regarding standard of care, causation, and damages; and (3) Dr. Mitchell A. Blass, an infectious disease specialist retained to testify regarding causation and damages.

Trial took place in December 2023. After hearing the expert testimony, the jury returned a verdict for Dr. Wanner and his clinic. Because the jury found no negligence, it did not answer questions on causation or damages.

Wardlow moved for a new trial. In her motion, she claimed irregularity in the proceedings, errors at law, mistakes in fact, and arbitrary and capricious rulings. She alleged the district court treated her experts unfairly and erred in various evidentiary rulings. The district court denied her motion, stating:

---

[2] Judith Wardlow's husband, David, was also a plaintiff, alleging loss of spousal consortium. Our references to Wardlow in this opinion are to Judith.

> [B]oth plaintiffs and defendants received a fair trial, there is no basis that further testimony from any of plaintiffs' expert witnesses in this matter, would have benefited the plaintiffs. Both plaintiffs' and defendants' experts were held to the same parameters regarding testimony . . . . [T]he Court finds the trial ruling to be consistent with the Iowa Rules of Evidence regarding hearsay, speculation, expert testimony, and all other relevant rulings made in this trial . . . . Simply put, plaintiffs did not suffer prejudice.

Wardlow appeals.

## II. Analysis

Wardlow raises four issues on appeal. First, she argues the district court erred in restricting the testimony of her three expert witnesses. Her overarching grievance is that the district court's rulings favored Dr. Wanner's experts over Wardlow's experts. Second, she contends the court erred by allowing hearsay through admission of her social security and personnel files. Third, she claims the court erred by denying her motion for directed verdict on Dr. Wanner's mitigation-of-damages defense. Fourth, she argues the court erred in preventing her from playing Dr. Wanner's video deposition. She asks us to reverse and remand for a new trial. In assessing her claims, we find only two cognizable questions: (1) the ruling on Dr. Wanner's video deposition and (2) the challenges to Dr. McCartan's testimony. As detailed below, we find the other alleged errors were harmless because the jury did not find that Dr. Wanner was negligent.

### A. Scope and Standards of Review

Iowa Rule of Civil Procedure 1.1004 governs new-trial motions. That rule lists nine grounds an aggrieved party may rely on to assert an issue "materially affected movant's substantial rights." Iowa R. Civ. P. 1.1004. Wardlow cites sections (1) and (8). Section (1) permits a new trial based on "[i]rregularity in the

proceedings of the court, . . . or any order of the court . . . or abuse of discretion which prevented the movant from having a fair trial." *Id.* Section (8) permits a new trial for "[e]rrors of law occurring in the proceedings, or mistakes of fact by the court." *Id.* The rule includes two hurdles. As movant, Wardlow must prove a listed ground *and* show that the error materially affected her substantial rights. *See Fry v. Blauvelt*, 818 N.W.2d 123, 129−32 (Iowa 2012).

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Id.*, at 128. When the motion for a new trial is based on discretionary grounds, we review for abuse of discretion. *Id.* We review a district court's ruling on a motion for directed verdict for correction of errors at law. *Pavone v. Kirke*, 801 N.W.2d 477, 486 (Iowa 2011). We generally review rulings on the admissibility of evidence for abuse of discretion. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). But we review hearsay rulings for errors at law. *State v. Skahill*, 966 N.W.2d 1, 8 (Iowa 2021).

### B. Dr. Wanner's Video Deposition

We first address Wardlow's claim that the district court's ruling on Dr. Wanner's video deposition violated Iowa Rule of Civil Procedure 1.704(2).[3] Wardlow wanted to play the video deposition to the jury in her case in chief, even though Dr. Wanner was present in the courtroom. The court ruled on a motion in limine that if "he's here, we're going to call him as a witness, and he's going to testify. If he testifies inconsistent, then we'll be able—you'll be able to use the

---

[3] "Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial . . . [f]or any purpose if, when it was taken, deponent was a party adverse to the offeror." Iowa R. Civ. P. 1.704(2).

deposition transcript or video to impeach him." That ruling, Wardlow now argues, eliminated the prospect of offering Dr. Wanner's video deposition "absent impeachment or any other objections to cloud the testimony." In her words, the plaintiffs were "no longer masters of their own case." But Dr. Wanner urges that Wardlow did not preserve error on that claim, disputing the finality of the court's limine ruling.[4]

Assuming without deciding that error was preserved, we find Wardlow fails to explain how her substantial rights were materially affected by the ruling. True, rule 1.704(2) may have allowed Wardlow to publish Dr. Wanner's video deposition to the jury, assuming it was otherwise admissible under the rules of evidence. But under rule 1.1004, Wardlow must show that restricting her use of the video deposition to impeachment purposes materially affected her substantial rights. And she falls short of that showing. Notably, Wardlow did not disclose page and line designations for the deposition transcript. These designations—required fourteen days before trial under their scheduling and discovery plan—would have allowed Dr. Wanning to review and object outside the jury's presence. Thus, Wardlow did not facilitate the objection-free use of the video deposition that she envisioned. Nor did she use the deposition for impeachment purposes at trial to minimize any prejudice she anticipated from the court's limine ruling.

---

[4] Generally, a court's ruling on a motion in limine is not final and the parties must renew their objection at trial. *State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006). But "if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial." *Id.* (quoting *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979)).

Because Wardlow fails to prove any alleged error materially affected her substantial rights, she is not entitled to a new trial under rule 1.1004.

## C. Dr. McCartan's Testimony

Wardlow complains about the district court's treatment of all three of her expert witnesses. But only Dr. McCartan could testify to the standard of care.[5] So we limit our review to that expert. When discussing Dr. McCartan's testimony, Wardlow first points to three defense objections sustained by the district court, alleging that they amounted to an improper limitation of the scope of his testimony. Second, Wardlow alleges defense counsel violated a limine ruling by asking Dr. McCartan about being paid for his testimony. Third, she asserts that the district court allowed defense counsel to badger Dr. McCartan.

On the second and third points, Dr. Wanner contests error preservation. Because Wardlow did not object to the question about compensation, did not ask for a mistrial, and agreed to the curative instruction that was given, we find any error was waived. On the badgering issue, Wardlow objected but did not receive a ruling from the district court. So she did not preserve error. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

---

[5] As discussed below, her other two experts—Dr. Sassman and Dr. Durvasula—gave opinions only as to causation or damages, issues that were not reached by the jurors because they found no negligence. So any error stemming from their testimony was not grounds for reversal. *See Shawhan v. Polk Cnty.*, 420 N.W.2d 808, 810–11 (Iowa 1988).

As for Wardlow's claim that the district court wrongly limited the scope of Dr. McCartan's testimony, she does not show that those alleged errors materially affected her substantial rights. In her briefing, Wardlow contends that the district court's rulings "constitute errors of law and were arbitrary and capricious" and "warrant a new trial pursuant to Iowa Rule of Civil Procedure 1.1004(1) and (8)." But she offers no explanation how three isolated rulings on defense objections prejudiced her negligence case. *See Fry*, 818 N.W.2d at 130. Without more specificity outlining prejudice, we cannot find material harm to her substantial rights. A new trial is unwarranted.

### D. Any Remaining Errors Were Harmless Given the Jury's Verdict

Because the jury found Dr. Wanner was not negligent, it did not proceed beyond that question on the verdict form. Thus, any error concerning causation or damages did not affect Wardlow's substantial rights. *See Shawhan v. Polk Cnty.*, 420 N.W.2d 808, 810–11 (Iowa 1988) (finding evidentiary error related to the plaintiff's damages was non-prejudicial where "the jury found by special verdict that defendant county was not negligent"); *see also Bingham v. Marshall & Huschart Mach. Co., Inc.*, 485 N.W.2d 78, 82 (Iowa 1992) ("Even if the court improperly excluded evidence offered to prove damages, it is not reversible error where the jury finds in favor of the defendant on the issue of liability."). The remainder of Wardlow's claims fall into this category.

### 1. Experts Sassman and Durvasula

Having rejected Wardlow's contentions concerning Dr. McCartan above, we turn to her claims involving the other two experts: Dr. Sassman and Dr. Durvasula.

Wardlow retained Dr. Sassman to discuss damages. Wardlow alleges that the district court erred in sustaining defense objections to hearsay and preventing Dr. Sassman from testifying about admitted medical records.[6] But because the jurors did not proceed beyond negligence in their verdict, any error in the court's rulings over Dr. Sassman's testimony is harmless and not grounds for reversal. *See Shawhan*, 420 N.W.2d at 810–11.

Wardlow's third expert witness was Dr. Durvasula. Wardlow contends that the district court should have permitted Dr. Durvasula, an infectious disease doctor, to testify about the standard of care Dr. Wanner owed her. Because standard of care relates to negligence, the issue the jury decided, whether Dr. Durvasula could testify to the standard of care determines whether any alleged errors relating to his testimony are harmless.

Iowa Code section 147.139 governs the qualifications for standard-of-care experts in malpractice cases. A new version became effective July 1, 2017, in the middle of Wardlow's post-operative care. Before that date, the statute required that a standard-of-care expert's "medical or dental qualifications relate directly to the medical problem or problems at issue and the type of treatment administered in the case." Iowa Code § 147.139 (2016). The amended provision requires that the expert be "licensed to practice in the same or a substantially similar field as the defendant." *Id.* § 147.139(1) (Supp. 2017).

---

[6] Of the numerous spots in the transcript that Wardlow cites in her briefing to support this contention, only three were sustained hearsay objections. For two of those objections, Wardlow rephrased the question and was able to elicit the information sought.

At trial, the district court applied the 2017 version. On appeal, Wardlow contends we should apply the 2016 version, while Dr. Wanner lobbies for the 2017 standard. The 2017 version "applies to causes of action that accrue on or after the effective date of [the amendment]." 2017 Iowa Acts ch. 107, § 5. Under Iowa law, a medical malpractice action accrues "when the injured party's actual or imputed knowledge of the injury and its cause reasonably suggest an investigation is warranted." *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 461–62 (Iowa 2008) (analyzing statute of limitations). Here, there is no clear accrual date, as the 2017 version was enacted before the completion of her treatment with Dr. Wanner. Nor did the district court decide the accrual issue, because Wardlow never challenged the 2017 version until her reply brief. In fact, she accepted the 2017 language during trial. Because we cannot review an issue not decided below, we apply the 2017 version. *See Garwick v. Iowa Dep't of Transp.*, 611 N.W.2d 286, 289 (Iowa 2009) ("Issues not raised before the district court . . . cannot be raised for the first time on appeal."); *Ward v. Unity Healthcare*, No. 20-1516, 2021 WL 5918408, at *4 (Iowa Ct. App. Dec. 15, 2021) (applying the code year the district court applied because the party failed to challenge it until appeal).

The 2017 language sets a less flexible standard. It envisions that standard-of-care experts work in the "same or substantially similar field as the defendant." Dr. Wanner is a podiatrist. Dr. Durvasula is an infectious disease doctor. They are not in the same or similar field, and thus Dr. Durvasula could not testify to the standard of care. Thus, any alleged errors related to Dr. Durvasula's testimony are harmless. *See Shawhan*, 420 N.W.2d at 810–11.

### 2. Social Security and Personnel Files

Beyond expert witnesses, Wardlow argues that the district court wrongly admitted her social security and personnel files. In her view, they are hearsay as out-of-court statements offered for the truth of the matter asserted—to show that she was disabled. *See* Iowa R. Evid. § 5.801(c). Alternatively, she argues the evidence was confusing to the jury under Iowa Rule of Evidence 5.403, suggesting she could not work because of disability, not because of her foot injury.

But because these files were relevant to issues of causation and damages, not Dr. Wanner's negligence, any error is harmless. *See Shawhan*, 420 N.W.2d at 810–11.

### 3. Motion for Direct Verdict

Finally, Wardlow contends the district court should have granted her motion for directed verdict. At trial, Wardlow sought a directed verdict on two of Dr. Wanner's defenses: failure to mitigate damages and intervening superseding cause. The court denied the directed verdict for the mitigation defense but granted it for the intervening cause defense. Because mitigation pertains to damages and not Dr. Wanner's negligence, any error was harmless. *Id*.

## III. Conclusion

Because Wardlow failed to prove how the alleged errors materially affected her substantial rights, and because many alleged errors were harmless given the jury's verdict of no negligence, we affirm the district court's denial of a new trial.

**AFFIRMED.**